## Boynton *versus* Housler.

| 73 | 453 |
|---|---|
| f220 | ³502 |

1. Where a parol contract for purchase of lands has been carried on *malâ fide*, there is a resulting trust and equity will decree a conveyance.

2. Equity will not permit one to hold a benefit which he has obtained by fraud, either of himself or another.

3. A decedent's estate was to be sold on execution, the widow having an interest to the extent of her exemption; her friends agreed to purchase the land for her; the execution-creditor agreed with her that if they would not bid against him he would convey a portion to her; they refrained from bidding and he bought the property at an undervalue. *Held*, that he was a trustee *ex maleficio* for the widow.

4. The widow having an interest in the land under the exemption laws, the agreement was not void as to the creditors of the decedent.

5. Beegle *v.* Wentz, 5 P. F. Smith 369; Seichrist's Appeal, 16 Id. 237, approved; Slingluff *v.* Eckel, 12 Harris 472, distinguished.

March 28th 1873.   Before READ, C. J., AGNEW, SHARSWOOD, and MERCUR, JJ.   WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Cameron county* : Of January Term 1872, No. 308.

This was an action of ejectment for 200 acres of land in Shippen township; it was brought December 22d 1870, by A. H. Boynton against Elizabeth Housler and others.

Merrick Housler died seised of the real estate mentioned in the writ; it was sold after his death under executions against his administrators, his widow Elizabeth Housler (defendant) and children; and was sold by the sheriff to W. A. Simpson, the plaintiff, for $110, and by him sold to Boynton, the plaintiff in this ejectment.

Mrs. Housler resisted a recovery, alleging that some of her friends proposed to buy the tract for her, and that Simpson agreed that if they would not bid against him he would buy the property and convey to her the " homestead," a part of it containing about 18 acres ; this he afterwards refused to do.

The cause was tried January 24th 1872, before Wilson, J.

Under objection of defendant and exception, the plaintiff testified: " I saw Simpson the day before the sale.   I spoke to him about it, and wanted to know if I had not better get some one to bid it up.   This was before Mr. Boynton's store door.   I asked him if he could do anything to save me a home.   I spoke about getting some one to bid and run the property up.   He said he thought it was not best.   He thought it had best be sold as privately as it could be, and he would get some one to bid it off and deed me the homestead.   He said he would get Mr. Newton to bid it off for him.   He said he would have it sold as low as it could be sold.   My friends were there to bid it up ; they said they would bid it up as high as $1200.   I don't recollect of anything more being said between him and me.   He said it was best for me not to get any bidders.   On that agreement I did not get any bidders. I had a contract for the land from Aden Housler.   The first conversation I had with Simpson was the day before the sale, before Boynton's store.   I went in and called him out.   He sent for me to come down and meet him at Mr. Newton's office.   I told him I had come to see him; I had made arrangements with Aden Housler for some one to bid on the property.   They (my friends) said they would attend the sale and see that the property did not go for nothing.   I don't recollect that I saw my friends after this conversation and told them not to bid."

·Aden Housler testified: " Mrs. Housler employed me to see Mr. Simpson about the sheriff's sale.   I went down to see him in June 1868.   I asked him what he would do about it.   I told him I had bought it, and found he had some little judgments on it, and I did not know it at the time I bought.   He said he had two or three judgments against Housler.   He agreed for me to go back

[Boynton v. Housler.]

and tell Mrs. Housler that she should have the homestead, and that he would press his claims far enough to give her a homestead. He said he had learned I had bought it, and I told him I had. He asked me what I intended to do. I said I had bought it with an understanding with her, and I had given her a contract, that if I held it on that I should give her a deed. He said he would give her a deed, and if I would, it would be all right. The mes-. sage he sent her was for me and her not to interfere, and have it bid off as low as possible, and that she should have the homestead, and not to get any bidders, that he would get some one to bid it off, and that would be better than for her to bid it off. He said, let it be sold as low as it could. If she could not make this arrangement I was to bid off all the property, and she should have the homestead. I would have bid $1250 for the property. I saw Mrs. Housler the day before the sale, or day of the sale, and she told me not to bid. I did not bid. I forbid the sale at Simpson's request, he saying if I showed my deed the sale would go low. About the time I heard Mr. Boynton was going to buy it I had a talk with him, and I told him that by an arrangement with the widow, and Simpson, she was to have the little homestead. Her title was not to interfere with the mill property. Simpson knew the situation of the homestead. * * * I spoke to him about a deed I had got of S. P. Davis. When I got my deed I was told the judgments of Simpson were not a lien. I was not employed to see Simpson but the once, until after the sale. At the sale I gave notice that I owned the property under the Davis title. Mr. Simpson was not here on the day of sale, and was not at the court-house that I know of. I had a conversation with Boynton before he purchased of Simpson, he said he would not buy unless he could arrange with the widow."

Joseph Housler testified: "I was at Lock Haven with my brother; was at Simpson's office. My brother spoke to him about his own title; Simpson asked him if he wanted to take any advantage of the widow. My brother replied, that he had made a contract with the widow for the homestead. He sent word to Mrs. Housler that she should give herself no uneasiness, that she should have the homestead. I think I heard him say he had made arrangements for Mr. Newton to bid it off."

The homestead lot contained about 18 acres; there was evidence as to its boundaries.

H. H. Boynton, defendant, testified: "I had a conversation with Aden Housler; I never had any knowledge that Mrs. Housler had any claim to this property until to-day. I told Aden Housler that I did not want to buy the property if any of the Houslers wanted to buy it. I never heard that Simpson agreed to convey to Mrs. Housler till this day. I supposed Mrs. Housler lived on the pro-

perty. Mr. Housler never talked of her claim to me before I bought.''

It was agreed that Merrick Housler died insolvent.

The plaintiff submitted these points :—

1. If the jury believe that the plaintiff, A. H. Boynton, received the conveyance of the land in dispute from W. A. Simpson, without any notice of the alleged agreement between Simpson and Elizabeth Housler, he is entitled to recover.

2. The fact that Elizabeth Housler and the children of Merrick Housler, deceased, continued in possession of the land in dispute after the death of Merrick Housler, and up to the time of the sale of the land by Simpson to Boynton, does not amount to constructive notice to Boynton of any equities, or equitable trust that Elizabeth Housler might have in the land.

3. Even if the jury believe, that W. A. Simpson did agree with Elizabeth Housler, before the sheriff's sale of the land in dispute to him, that in case she would not procure bidders for said land at the sheriff's sale, he would bid it in and convey the homestead to her, that such contract is without consideration, in fraud of creditors of the estate of Merrick Housler, and therefore void, and the plaintiff is entitled to recover.

4. Under all the evidence in the case the plaintiff is entitled to recover.

The court affirmed the first two points of the plaintiff, negatived the third, and affirmed the fourth, except as to the eighteen acres; saying, this " is to be disposed of by the jury under the general charge.''

The defendants' point was :

" The possession of the defendant at the time when Boynton purchased of Simpson, was notice to Boynton of the extent of her right, and he finding her in possession, was bound to make inquiries of her under what right she claimed possession.''

The point was negatived.

The court, in the charge, after giving a synopsis of the evidence, and referring to the alleged agreement between Mrs. Housler and Simpson, said : * * *

" The evidence to sustain the agreement is contained in her own testimony, and the testimony of Aden Housler. If the jury are satisfied that they have testified truly in relation to the agreement alleged to have been made by Elizabeth Housler with W. A. Simpson, and that Elizabeth Housler had in good faith carried out her part of the agreement, then we instruct you that under the ruling of the Supreme Court in the case of Beegle *v.* Wentz, 5 P. F. Smith 369, and Seichrist's Appeal, 16 Id. 237, Elizabeth Housler is in position to have that contract enforced as between herself and W. A. Simpson, and the present plaintiff stands in no better position, provided the evidence satisfies the jury that A. H.

[Boynton *v.* Housler.]

Boynton had notice prior to his purchase of the claim of Elizabeth Housler, or such notice as would put an ordinarily prudent man upon inquiry." * * *

The verdict was for the plaintiff " for the land described in the writ, with the exception of that part known as the ' Homestead,' containing 18 or 20 acres."

The plaintiff took out a writ of error ; he assigned for error :

1. Admitting the evidence objected to.

2, 3. Not affirming the plaintiff's third and fourth points.

*R. P. Allen* (with whom was *J. B. Newton*), for plaintiff in error.—Agreements by bidders to prevent competition cannot be enforced : 1 Story's Eq. J., sect. 293 ; Slingluff *v.* Eckel, 12 Harris 472. No money having been paid by Mrs. Housler, the contract cannot be enforced: Barnet *v.* Dougherty, 8 Casey 371.

*C. B. Curtis*, for defendant in error, cited Beegle *v.* Wentz, 5 P. F. Smith 369 ; Seichrist's Appeal, 16 Id. 237.

The opinion of the court was delivered, May 17th 1873, by

MERCUR, J.—The plaintiff claims to recover this land under title acquired at a sheriff's sale, when it was sold as the property of the estate of Merrick Housler, deceased. The defendant, who is the widow of Housler, made defence to a portion of land called " The Homestead," containing about eighteen acres. Prior to, and at the time of, the sheriff's sale, the defendant and her minor children were in the actual possession of the whole property. She had entered into a contract to purchase it from Aden Housler, who held a deed for it subject to the payment of the judgments. While thus holding whatever interest passed to her under this contract, as well as her right of dower, she made the arrangement with Simpson, under which he purchased at sheriff's sale.

The evidence given by the defendants, which the jury found to be true, was substantially this, to wit : Prior to the sheriff's sale the defendant had agreed with Aden Housler to bid off the whole land, provided it was not run up higher than $1200 or $1250, which was the value of the property, and if he became the purchaser he was to deed " The Homestead " to her. Upon the day next preceding the sale Simpson, who was the plaintiff in the execution, was informed of this arrangement between Aden Housler and the defendant. He then said to them if they would not interfere or bid at the sale, and have it bid off as low as possible, that she should have the homestead ; she should not get any bidders, and he would get some one to bid it off ; that would be better than for her to bid it off. The defendant and Aden agreed to this proposition. Relying upon it they did not interfere nor bid at the

sale; nor did she get any other person to bid for her. Simpson bid it off for $110. The plaintiff bought of him with full knowledge of this arrangement.

Under these facts the court below held that a trust *ex maleficio* arose in favor of the defendant as to the homestead.

All the errors assigned are substantially to this conclusion.

Where a parol contract for the purchase of land has been carried on malâ fide, there is a resulting trust implied by law, and equity will decree a conveyance according to the terms of the contract: McCulloch *v.* Cowher, 5 W. & S. 427. Equity will not permit one to hold a benefit which he has derived through the fraud even of another, and much less will it do so if he has acquired it by means of his own fraud: Sheriff *v.* Neal, 6 Watts 540. In Morey *v.* Herrick, 6 Harris 128, Justice Bell said, "It is equally well settled that if one be induced to confide in the promise of another, that he will hold in trust, or that he will so purchase for one or both, and is thus led to do what otherwise he would have forborne, or to forbear what he contemplated to do, in the acquisition of an estate, whereby the promissor becomes the holder of the legal title; an attempted denial of the confidence is such a fraud as will operate to convert the purchaser into a trustee *ex maleficio*." Where one holding an article of agreement for one hundred and sixteen acres of land, upon which he had paid five dollars only, and was liable to be turned off, surrendered his title under a parol contract that ten acres thereof should be conveyed to him so soon as the person for whose benefit he gave up his title acquired a deed for the legal title, it was held to create a trust *ex maleficio* in his favor as to the ten acres: Plumer & Crary *v.* Reed, 2 Wright 46. Nor does it make any difference that the title was acquired by Simpson through a judicial sale: Beegle *v.* Wentz, 5 P. F. Smith 369, and cases there cited. The case of Beegle *v.* Wentz was one in which a debtor was induced to relinquish his claim to the $300 exemption, and consented that the whole of his land be sold, under an agreement that the plaintiff was to take a sheriff's deed for the same and make to the debtor a deed for the part agreed upon. It was held that if the debtor was induced to surrender his right on the false assurance that the part should be left to him, the plaintiff refusing, was a trustee *ex maleficio*. This was since the Act of April 22d 1856, and was held to be such a trust or confidence as was not affected by that act. The same principle is affirmed in Seichrist's Appeal, 16 P. F. Smith 237.

It is contended, however, that inasmuch as the agreement between the defendant and Simpson was that she and her agent and friends should not bid at the sale, it was contrary to public policy, and therefore void. In support of this principle the case of Slingluff *v.* Eckel, 12 Harris 472, is cited. We assent to the

[Boynton v. Housler.]

correctness of the law there declared, as applied to the facts in that case. That was an agreement between two persons, neither of whom had any possession of or interest in the land. The court there said: " What we do decree is, that one bidder cannot legally buy off another with money, or the promise of money."

The distinction in this case is, that the defendant had an interest in the land in reference to which the contract was made, and she was to retain a portion of that land. This is a distinction clearly taken and recognised in Beagle v. Wentz, and in Seichrist's Appeal, *supra*.

Judgment affirmed.