## Wolford and Wife *versus* Herrington.

86   39
191   360
f 86   39
220   ²502

1. Where one has a bona fide claim, whether valid or not, to certain land, and is induced to confide in the verbal promise of another that he will purchase the same for the benefit of the former at a sheriff's sale, and in pursuance of this arrangement allows him to become the holder of the legal title, a subsequent denial of such promise by the purchaser is such a fraud as will convert him into a trustee *ex maleficio*.

2. The ruling in Wolford *v.* Herrington, 24 P. F. Smith 211, that the purchaser would be a trustee *ex maleficio*, even if the party to whom he made the verbal promise had no interest in the land, reconsidered and overruled.

3. Beegle *v.* Wentz, 5 P. F. Smith 369, and Boynton *v.* Housler, 23 Id. 453, followed.

November 21st 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas of *Crawford county:* Of October and November Term 1876, No. 58.

Ejectment for twenty-five acres of land, brought by John Wolford and Rachel, his wife, in right of the wife.

[Wolford *v.* Herrington.]

The premises in controversy were originally purchased by Wolford from James Muse. There being some difficulty about the title, Mrs. Wolford subsequently paid the purchase-money out of her separate estate, and received a deed therefor from P. K. Muse, his father, James Muse, having in the meantime died. This deed Mrs. Wolford failed to record. The premises were afterwards sold as the property of John Wolford on a judgment in favor of one Ellsworth against John B. Wightman and John Wolford. Previous to the sheriff's sale, September 18th 1867, Edward Herrington went to the house of John Wolford and advised Wolford and his wife not to rely on the title of Mrs. Wolford, but to allow him to attend the sheriff's sale, and purchase in the land for Mrs. Wolford, and offered to give Mrs. Wolford two years, or longer, to redeem the land. To this Mrs. Wolford objected, saying she had a deed to the land, and if she had to borrow the money she could procure it of Abijah Randolph. Herrington replied that he was willing to give longer time for the repayment of the money than Randolph ; and as a result of this conference, Herrington agreed with Wolford and his wife to attend the sheriff's sale, to act for the Wolfords and take charge of the business for them, to bid in the land for Mrs. Wolford, and give her two years in which to redeem it, and this agreement was to be put in writing before the sheriff's sale. The agreement was talked over between the parties in the presence of John B. Wightman and others, the day before the sheriff's sale, when Herrington was on his way to Meadville to transact this business for the Wolfords, and it was then agreed that the arrangement was to be put in writing, before the time of the sheriff's sale. The agreement was drawn up ; Herrington, however, did not sign it, saying that he would wait until after the biddings and sale, and that he would sign it then ; and when he had bid off the land he evaded signing it, saying he would sign the writing when the deed was acknowledged. The Wolfords, in consequence of this arrangement with Herrington, did not attend the sheriff's sale, and the land was sold to Herrington for $650, a price far below its real value.

Several times afterwards Herrington was requested to sign the agreement, but always refused. Interest was offered him from time to time, but he declined to receive it except as rent. Within two years after the sale the principal and interest were tendered him, but he refused to accept unless a fee of $50 was paid to his attorney for his services. In 1871 Edward Herrington died, and in October 1872, his son, Dewitt C. Herrington, brought an action of ejectment against John Wolford for the premises in dispute. At the trial the foregoing facts were disclosed, but the deed to Mrs. Wolford was not produced, and the court being of the opinion that there was not sufficient evidence to establish a title in Mrs. Wolford, directed a verdict to be found for the plaintiff. The case was

[Wolford v. Herrington.]

taken to the Supreme Court by the defendant, who assigned this instruction of the court as error, and after argument, in October 1873, before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ., an opinion was delivered by SHARSWOOD, J., AGNEW and WILLIAMS, JJ., dissenting, wherein it was held, under the authority of Beegle v. Wentz, 5 P. F. Smith 369, and Boynton v. Housler, 23 P. F. Smith 453, that as Mrs. Wolford had a claim to the land by an unrecorded deed, whether it conveyed a good title or not, Herrington was, under the facts of the case, converted into a trustee *ex maleficio,* and further, that the testimony in the case was sufficient, if believed, to make Herrington a trustee *ex maleficio,* independent of any title in Mrs. Wolford. The judgment was accordingly reversed, with the suggestion that on the new trial Mrs. Wolford should also be made a defendant. (See report of case, 24 P. F. Smith 313.) At the second trial the same ruling was substantially made by the court, Lowrie, P. J., with a verdict and judgment again for the plaintiff. The case was again argued, on substantially the same grounds, in this court, at October and November Term 1874, before AGNEW, C. J., and SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ., and upon consultation, WILLIAMS, J., being absent, the judges being equally divided, the judgment was affirmed (not reported.) Herrington then took possession of the property, and in March 1875, the plaintiffs brought this action. At this trial, which was again before Lowrie, P. J., the plaintiffs, together with the evidence produced at the former trials, put in evidence the deed of P. K. Muse to Mrs. Wolford, dated the 15th of December 1862, for the property, the consideration named therein being $450. Mrs. Wolford testified that she obtained the money thus paid from several of her relations, it being her desire to make the property secure, as there was some dispute about her husband's title. The following, among other points, were submitted by the plaintiffs, to which are subjoined the answers of the court :—

1. That if they find that Mrs. Wolford had a deed from P. K. Muse for the land in question, and that she was induced to confide in the verbal promises and agreement of Edward Herrington, that he would attend the sheriff's sale and bid off the land for her, and that in consequence he was allowed to obtain the legal title to the same, his denial of the confidence is such a fraud as will make him a trustee *ex maleficio.*

Ans. " Refused."

2. That if the jury find that Mrs. Wolford had an unrecorded deed for the land in question, and that on the eve of the sheriff's sale, Herrington, knowing of the deed, told her that her title was doubtful, and then and there promised and agreed with her and her husband that he would attend the sheriff's sale and buy the land for her, and that he would execute a writing before the

[Wolford *v.* Herrington.]

property was struck off, declaring that he bought it for her and giving her time for the redemption thereof, and that in consequence of such agreement he was allowed to obtain the legal title to the same, his refusal thereafter to comply was such a fraud as would make him a trustee *ex maleficio*.

Ans. "Refused."

3. That if the jury find that Mrs. Wolford had a claim to the land in question, whether valid or not, and that Edward Herrington did agree with her and her husband to attend the sheriff's sale for them, and bid off the land for her and give her time to repay him the amount bid for the same, and that this agreement was to be put in writing by Herrington before the property was bid off, and that Herrington avoided giving the writing before the bidding, by promising that he would do so after the sale and confirmation of the sheriff's deed to him, his refusal to comply thereafter with said agreement would be such a fraud as would make him a trustee *ex maleficio*.

Ans. "Affirmed. But not so if Mrs. Wolford knew that her deed was good for nothing and declined to record it."

6. If the jury believed that Mrs. Wolford had an unrecorded claim to the land in dispute, and was seeking friends to enable her to save it from the effects of a sheriff's sale, and then Edward Herrington volunteered to buy it in for her, and transfer the title to her in one, two or three years, and give her a writing to this effect as soon as he got the sheriff's deed, and that was agreed to by her, and he did so buy it in, he thereby became charged to hold the land as trustee for her, and is bound to convey it to her on being refunded his money and interest, within the time agreed upon, or in a reasonable time afterwards. · If you find the facts to be so, and that the plaintiff tendered the amount due to Herrington on his purchase, you will find for the plaintiffs, the said tender having been followed up by bringing the money into court.

Ans. "Affirmed, with the qualifications already stated to you. But such an arrangement with a mere stranger, having no color of right, would not be binding."

Verdict and judgment for the defendant, and plaintiffs taking this writ assigned as errors, among others, the foregoing answers to their points.

*William R. Bole*, for plaintiffs in error.—This case is within the rules laid down in Beegle *v.* Wentz, 5 P. F. Smith 369, and Boynton *v.* Housler, 23 P. F. Smith 453, and the questions involved have been decided in Wolford *v.* Herrington, 24 P. F. Smith 311.

*M. Park Davis* and *D. C. McCoy*, for defendant in error.— The deed of Mrs. Wolford gave her no title, and she is in pre-

cisely the same condition as any other stranger to the title.   A promise to purchase at a sheriff's sale for the benefit of a defendant in execution will not constitute the purchaser a trustee unless the purchase was made with the money of defendant: Barnet v. Dougherty, 8 Casey 371; Kellum v. Smith, 9 Casey 158; Jackman v. Ringland, 4 W. & S. 149; Williard v. Williard, 6 P. F. Smith 119.

In the cases of Beegle v. Wentz and Boynton v. Housler, *supra*, cited by the plaintiffs, the person setting up the trust had an interest not only in the land, but the title.   And in each there was a direct consideration for the promise.

Mr. Justice SHARSWOOD delivered the opinion of the court, January 7th 1878.

When this cause was in this court before on a former ejectment (24 P. F. Smith 311), there was no evidence of Mrs. Wolford's title to the land except her own parole testimony.   The deed was not in evidence.   The majority of the court thought, however, that there was evidence which ought to have gone to the jury that she had a bona fide claim—whether her title was good or bad—and if she had such a claim the case fell within the principle of Beegle v. Wentz, 5 P. F. Smith 369, and Boynton v. Housler, 23 Id. 453.

All after this in the opinion filed in that case was certainly extra-judicial, not necessarily involved in the decision, and I will frankly acknowledge that subsequent examination and reflection have satisfied me that I was in error in the position that Herrington would have been a trustee for Mrs. Wolford even if she had no interest.   I was induced to form this conclusion by a course of reasoning which I now think fallacious; that because a long line of cases had settled that when, at the execution of a writing, the party to whom it was delivered has promised to execute another, and on the faith of which the first was executed, the refusal subsequently to perform the promise was a fraud which would let in parole evidence of the transaction, to reform the writing.   I inferred that it would also be a fraud, under the Statute of Frauds and Perjuries, and make the party delinquent a trustee *ex maleficio*.   But these cases are inapplicable.   Had Mrs. Wolford been an entire stranger to the title, or the defendant in the execution, as whose property the land was about to be sold at sheriff's sale, then the determination in Jackman v. Ringland, 4 W. & S. 149, and Barnet v. Dougherty, 8 Casey 371; Kellum v. Smith, 9 Id. 158; Robertson v. Robertson, 9 Watts. 32, ruled the case.

Upon the trial of this cause in the court below, the deed of P. K. Muse and wife to Mrs. Wolford, dated December 15th 1862, was in evidence.   It expressed a consideration of $450, and Mrs. Wolford testified that she had paid that sum with her own money, which had been given to her by her parents and friends for the pur-

[Wolford *v.* Herrington.]

pose. She was living on the land with her husband, who had a prior and perhaps better title. There was certainly sufficient evidence for the jury that she had a bona fide claim to the land. The case of Beegle *v.* Wentz and Boynton *v.* Housler, *supra,* settle that where one having any interest (except the defendant in the execution) is induced to confide in the verbal promise of another that he will purchase for the benefit of the former at a sheriff's sale, and in pursuance of this allows him to become the holder of the legal title, a subsequent denial by the latter is such a fraud as will convert the purchaser into a trustee *ex maleficio.* It is true that in these cases the interest of the *cestui que trust* was not questioned. But while it is clear that a mere pretended claim, trumped up for the occasion, would be of no avail, it is different where the claim is bona fide. Five years before the transaction in question Mrs. Wolford, with the advice and assistance of her friends, had bought an outstanding title to her husband's land, which was her and his home. She was anxious to protect it, and for that purpose, to procure some friend to purchase her husband's interest at the sheriff's sale. The defendant offered to advance the money to buy the property, and hold it in trust for her. She had a friend she said who would let her have the money for one year.

Herrington said he would allow her two years in which to repay him. She spoke of having a writing drawn, setting forth the agreement. He said he would have his lawyer draw one and send it to her. The writing was drawn. Wightman, a friend of Mrs. Wolford, asked him at the sale to sign it. He said, " Wait till I bid it off, then I will sign it." After the sale he was again asked for the writing. He said, " Wait till I get my deed, then I will sign it." After he got the deed he was asked several times to do so, but refused. This was the testimony of Wightman, and it was confirmed by other witnesses.

The plaintiff was entitled to an unqualified affirmance of the first, second, third and sixth points. There was no evidence that the claim of Mrs. Wolford was not bona fide, or that she knew that her deed was good for nothing, and therefore did not record it. Herrington told her it would cost her some trouble, and she had better let him bid it off. All that can be inferred is that she thought it doubtful. Had she considered it a perfectly good title, independent of her husband's, there would have been no necessity of protecting herself by having the property bid off for her. Even if she knew that the title was bad at the time of the sheriff's sale, that would not show that she had not purchased it in good faith five years before.

Judgment reversed, and a *venire facias de novo* awarded.