# Hoover, Appellant, *v.* Strohm.

*Trusts and trustee—Vendor and vendee—Evidence—Parol evidence— Fraud.*

Where a vendee of land under articles of agreement procures another person to advance the purchase money and as security for the advances to take the title in his own name under a verbal promise to convey the land to the vendee upon the repayment of the advances, a violation of such promise converts the lender into a trustee ex maleficio; and in an ejectment to enforce such a trust the vendee is entitled to a judgment in his favor, but conditioned upon his payment to the lender of the debt,. and interest, and taxes paid by the lender.

Argued March 16, 1910.   Appeal, No. 2, March T., 1910, by plaintiff, from judgment of C. P. Dauphin Co., Sept. T., 1905, No. 467, for defendant, on case tried by the court without a jury in suit of Verdilla Hoover v. Henry L. Strohm.   Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Reversed.

Ejectment for land in the village of Rockville in Susquehanna township.   Before SHULL, P. J., specially presiding.

The case was tried by the court without a jury under the Act of April 22, 1874, P. L. 109.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for defendant on the case stated.

*Paul A. Kunkel,* with him *Frederick M. Ott,* for appellant.—No trust was created by the transaction between the parties: Martin v. Baird, 175 Pa. 540; Sterck v. Germantown Homestead Co., 27 Pa. Superior Ct. 336; Safe Deposit, etc., Co. v. Linton, 213 Pa. 105; Grove v. Kase, 195 Pa. 325; Kisler v. Kisler, 2 Watts, 323; Williard v. Williard, 56 Pa. 119.

*E. E. Beidleman,* for appellee.—This testimony, together with the receipts, clearly shows that the learned court below was right in concluding that the appellant took

this title for the appellee, and that the appellant having refused to convey the title now holds the same as trustee ex maleficio for the appellee: Beegle v. Wentz, 55 Pa. 369; Boynton v. Housler, 73 Pa. 453; Morey v. Herrick, 18 Pa. 123; Wolford v. Herrington, 86 Pa. 39; McCloskey v. McCloskey, 205 Pa. 491; Lancaster Trust Co. v. Long, 220 Pa. 499.

OPINION BY HEAD, J., October 10, 1910:

The action was ejectment and the cause was tried before a court without a jury. From the abstracts of title filed and the evidence generally, in this respect not disputed, it appears that one Mary S. Turns was formerly the owner of the land in dispute and that both plaintiff and defendant claim under her. It further appears that perhaps as early as December, 1903, Strohm, the defendant, entered into an agreement with her for the purchase of the property for the sum of $875, making a small payment on account for which the vendor gave him an acknowledgment in writing. That he thus acquired some interest in the property we do not understand to be denied. If at this time the plaintiff had any knowledge of the transaction, her only part in it was that of a prospective money lender, it appearing that she was willing to advance to Strohm the money necessary to pay for the property and permit him to repay it in small installments with interest. We do not think we need stop to inquire whether the receipt given by the vendor to Strohm was of such character that he could have enforced specific performance of the contract of sale, had the vendor undertaken to repudiate the contract. She having been at all times ready and willing to complete the sale, we do not think the present plaintiff had any standing to raise that question.

The deed from Miss Turns, although executed in January, 1904, was not delivered until May of the same year. This delay arose from the fact that upon an examination of the title some doubt existed as to whether she could convey a good title in fee simple, or whether it would be

necessary to have certain other parties join therein. A case stated was prepared and submitted to the court, resulting in a judgment which was entered about the end of April. Meantime Strohm had taken possession of the property which he has since retained and he paid the costs and expenses incurred in the examination of the title and the legal proceedings already mentioned.

In the deed, as executed and delivered, Verdilla Hoover, the plaintiff, was named as the grantee, and herein is found the root of the controversy between the parties. She does not deny that her relation towards the defendant in the first instance was that of a prospective money lender. She does not deny that he had negotiated with the former owner for the purchase of this property, agreed on the price to be paid, and had actually paid a portion of the purchase money. She does not deny that with matters in this shape the defendant "applied to the said Verdilla Hoover, the plaintiff, for financial assistance to complete the purchase." She does allege, however, in her abstract or statement of claim, that later on it was verbally agreed between the parties that she should pay the balance of the purchase money and take the title in her name, at the same time executing and delivering to the defendant a written agreement providing for a conveyance to him, upon repayment of the purchase money with interest, in the manner and at the times to be provided for in the agreement. She declares in her testimony that the defendant verbally assigned the sale to her, or, to use her own language, "Mr. Strohm turned that sale over to me." In speaking of this arrangement, the attorney, who at the time represented all of the parties and was called as a witness, delivered the following testimony, inter alia: "Q. The deed was to be made to Miss Hoover? A. Yes, sir. Q. With the understanding that Miss Hoover was to turn that title over to Mr. Strohm when, under the agreement with her, he paid her certain money? A. That is correct. Q. And she got the title under that agreement and understanding? A. She got the title because of that,

because she couldn't have gone and bought it if he hadn't asked her. Q. From whom? A. From Mary Turns. Miss Hoover couldn't have got it except by this arrangement with Mr. Strohm."

The parties later on disagreed as to the amount of hand money which was to be paid. There does not seem to have been any dispute that the remainder of it, after the down payment, was to be paid in monthly payments of not less than $10.00. As to the cause of this disagreement the testimony of the parties is hopelessly conflicting. An agreement in form was actually drawn up by counsel and given to the plaintiff. In it the amount of the hand money was left blank. She never filled in any amount and never executed the agreement herself, and of course the defendant never did.

The defendant testified to repeated tenders made by him, or his wife for him, of various sums of money on account of the monthly installments. All of these were flatly denied by the plaintiff. She in turn declares that the defendant, finding himself unable to raise the required hand money, and believing the undertaking to be beyond his financial ability, agreed that the plaintiff should take the title for herself and that he would become her tenant at a rental agreed upon between them. All of this he just as distinctly contradicts.

With the testimony in such a state it seems clear to us there is no ground upon which the findings of fact of the learned court below can be successfully assailed here. If these findings be adopted they justify the conclusion that the defendant had a bona fide claim to the land; that he was induced to confide in the promise of the plaintiff that she would purchase for his benefit and thus become the holder of the legal title. In that event "a subsequent denial by the latter (the plaintiff) is such a fraud as will convert the purchaser into a trustee ex maleficio:" Wolford v. Herrington, 86 Pa. 39; Cowperthwaite v. Bank of Carbondale, 102 Pa. 397; Boynton v. Housler, 73 Pa. 453. From an examination of these cases it appears that the principle

relied on operates in favor of one who has any interest in
the land or a bona fide claim to it, whether valid or not.
In such cases the true doctrine is thus stated by SHARS-
WOOD, J., in Wolford v. Herrington, 86 Pa. 39: "She was
living on the land with her husband, who had a prior and
perhaps better title.   There was certainly sufficient evi-
dence for the jury that she had a bona fide claim to the
land.   The case of Beegle v. Wentz, 55 Pa. 369, and Boyn-
ton v. Housler, 73 Pa. 453, settle that where one having
any interest (except the defendant in the execution) is in-
duced to confide in the verbal promise of another that he
will purchase for the benefit of the former at a sheriff's sale,
and in pursuance of this allows him to become the holder of
the legal title, a subsequent denial by the latter is such a
fraud as will convert the purchaser into a trustee ex male-
ficio."   Applying this principle to the facts of the case in
hand as found by the learned trial court, the conclusion
reached that the plaintiff acquired the legal title subject to
a trust in favor of the defendant rests upon a solid founda-
tion and ought not to be disturbed.

But a proper execution of the trust requires not only
that the defendant should be restored to the position
he was originally intended by the parties to occupy, but
also that the plaintiff in turn be given back the money
with which this land was purchased at the instance and
for the benefit of the defendant.   That the learned trial
court recognized this is shown by the following language
taken from his opinion overruling the exceptions to the
conclusions reached by him, viz.: "The defendant made
a tender in court at the trial of the full amount of debt
and accrued interest to that date.   This is an acknowledg-
ment of that amount being still due and owing and which
is presumed to be in court.   If it was not so placed and
was retained by the defendant, he must account to the
plaintiff for the amount of moneys which she furnished
together with the accrued interest up to the date of this
final decree and judgment and also all taxes by her paid
and expended upon the premises in his behalf.   It is not

contended that defendant shall procure title and deprive the plaintiff of her money."

Nevertheless a general judgment without terms was entered in favor of the defendant. This would necessitate further litigation and subject the plaintiff to useless expense and delay in recovering her money, if not indeed to some risk of losing it entirely. The learned court below had ample power to have ascertained the precise amount in dollars and cents due to the plaintiff and to have entered a conditional judgment which would have secured to her the payment of that sum, at the same time giving to the defendant the title to the land, and thus ending the controversy. The record shows that at the conclusion of the trial the defendant made an informal offer or tender to pay $1,002.70, alleged to be all of the balance of the purchase money with interest thereon. The only objection made to this offer, as to the amount involved, was that it did not include the taxes. The counsel for defendant then stated: "We include that in the offer." But there was no liquidation of this amount, and therefore, even if we assume that the plaintiff was satisfied with the calculation stated as to the amount of the purchase money and interest, there is yet left a gap which we are unable with certainty to fill from the record as it now stands.

The record must therefore go back so that the learned trial court may ascertain the full sum due from defendant to plaintiff and he is thereupon directed to enter judgment for the plaintiff for the premises described in the writ with six cents damages and costs; to be released however and judgment to be entered for defendant if within thirty days from entry of such judgment and notice thereof, he pay into court for the benefit of the plaintiff the sum so ascertained to be due her. She before lifting said money to deliver to defendant or file in court a quitclaim deed for the land in controversy. The costs of this appeal to be paid by appellee.

Judgment reversed and the record is remitted with direction to proceed in accordance with this opinion.