# Cameron *v.* Townsend et ux., Appellants.

*Appeals—Binding instructions—Evidence—Inferences.*

1. In determining whether or not binding instructions should have been given by the court below, all the evidence and inferences therefrom, favorable to the party against whom it is claimed those instructions should have been given, must be taken as true, and all unfavorable to him, if depending solely upon testimony, must be rejected.

*Trusts and trustees—Trustee ex maleficio—Parol trust—Fraud —Equity—Vendor and vendee—Judicial sale—Agreement to purchase at sale.*

2. In all cases of fraud, and where transactions in relation to the purchase of land have been carried on mala fide, there is a resulting trust by operation of law; but unless there is something in the transaction more than is implied from the violation of a parol agreement, equity will not decree the purchaser to be a trustee.

3. Ordinarily a trustee may purchase, at judicial sale, land in which his cestui que trust is interested, if the proceedings were wholly adversary, brought about through no act or neglect of the trustee, and he has not misled his cestui que trust in regard to the matter.

4. But where two parties have entered into a parol agreement regarding a sale of land about to be made, that one will purchase and hold the land for the other, and upon the faith of the agreement the latter has expended money and performed services for the benefit of both, the proposed purchaser will not be permitted to hold the land in violation of the agreement, especially where he has not given to the other, before the sale and in ample time to enable the latter to protect his interest, express and clear notice of an intention to be no longer bound by the agreement.

5. Where, on the faith of a statement made by a purchaser or intending purchaser at a judicial sale, prior to the time he obtained title, that he will hold the title when obtained for the benefit of another, the latter, in good faith, relinquishes to the former an actual or supposed right to or interest in the property, the purchaser will be compelled to comply with his agreement.

6. The evidence to establish a parol trust in relation to land, must not only be sufficient to convince a jury, but must also be so clear and precise as to satisfy the conscience of the trial judge, who, in such matters, acts as a chancellor.

Argued April 21, 1926.    Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SADLER, JJ.

Appeal, No. 177, Jan. T., 1926, by defendants, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1923, No. 5281, for plaintiff n. o. v., in case of William J. Cameron v. Walter Roger Townsend and Elizabeth Townsend. Reversed.

Proceedings under Act of April 20, 1905, P. L. 239, to obtain possession of real estate purchased at sheriff's sale. Before TAULANE, J.

The opinion of the Supreme Court states the facts.

Verdict for defendants. Judgment for plaintiff n. o. v. Defendants appealed.

*Error assigned* was in entering judgment for plaintiff n. o. v., quoting record.

*Morris Wolf,* with him *George H. Detweiler,* for appellants.—As Nathaniel Barr was an express trustee for appellants, appellee, whose agent Barr was, could not acquire title to the trust estate in violation of an express agreement to the contrary: Bartholomew v. Leech, 7 Watts 472; Tanner's Est., 218 Pa. 361; Bergner v. Bergner, 219 Pa. 113; Nay Aug Lumber Co. v. Trust Co., 240 Pa. 500; Bachrach v. Fleming, 269 Pa. 350; Schmid v. Theatre Co., 244 Pa. 373; Hechelman v. Geyer, 248 Pa. 430; Gilmore v. Drug Co., 279 Pa. 193.

A trust resulted, which was outside the statute of frauds, from the agreement between appellants and appellee at the time of the sheriff's sale, that the property was to be purchased by appellee and held in trust for appellants, who agreed to pay for the same with their funds, securing the repayment by a mortgage: Storey v. Lonabaugh, 247 Pa. 331; Meredith v. Bank. 275 Pa. 314; Gates v. Keichline, 282 Pa. 584; Barnet v. Dougherty, 32 Pa. 371; Kirk v. Kirker, 270 Pa. 158; Artz v. Meister, 278 Pa. 583.

*Wayne P. Rambo,* with him *Robert Mair* and *Ormond Rambo,* for appellee.—There is no writing signed by plaintiff and hence there is no trust by an express written agreement charging defendant.

There is no resulting trust; the entire consideration for the property was paid by Cameron from his own funds.

Under the decided cases, to create trust ex mal., the fraud must inhere in the acquisition of the title: Fisk v. Sarber, 6 W. & S. 18; Lusk's App., 108 Pa. 152; Barnet v. Dougherty, 32 Pa. 371; Kellum v. Smith, 33 Pa. 158; Bryan v. Douds, 213 Pa. 221; McCloskey v. McCloskey, 205 Pa. 491; Storey v. Lonabaugh, 247 Pa. 331; Williard v. Williard, 56 Pa. 119.

The simple avowal by a purchaser at sheriff's sale, whether made at the time of the purchase or afterward, that the purchase was for another, will not support the allegation of a trust: Carhart's App., 78 Pa. 100; Dollar Savings Bank v. Bennett, 76 Pa. 402; Johnson v. Shrawder, 80 Pa. Superior Ct. 125; Bennett v. Dollar Savings Bank, 87 Pa. 382.

Opinion by Mr. Justice Simpson, May 26, 1926:

Plaintiff, as the grantee of a purchaser at sheriff's sale, endeavored, by a proceeding under the Act of April 20, 1905, P. L. 239, to obtain possession of the property purchased. An answer was filed to his petition, and the jury, on the trial of the issues raised, rendered a verdict for defendants. Subsequently the court in banc entered judgment for plaintiff non obstante veredicto, and this appeal by defendants followed. In considering it, as appellee's counsel frankly admits, all the facts and inferences therefrom, which are favorable to defendants, must be taken as true, and all such as are unfavorable to them, if depending solely on testimony, must be rejected: Fluke v. Lang, 283 Pa. 54; First National Bank of N. J. v. Cattie Bros, 285 Pa. 202. Thus considered, the facts are found to be as follows:

One of the defendants (hereinafter called appellant, her husband being the other defendant), was the owner of a property known as the Frontenac Apartments. It was heavily encumbered; plaintiff (who was a lender of money upon property already thus greatly burdened) was the holder of the fifth mortgage thereon, and also of judgments, which were the eighth, ninth and tenth in

point of lien. A building association, which held the second mortgage, had entered up the bond and warrant of attorney accompanying it, and the property was advertised for sheriff's sale on a fi. fa. issued on that judgment. Learning of this fact, plaintiff sent for appellant's husband, and stated that he, plaintiff, had been in communication with counsel for the execution creditor, who would stay the sale if $10,000 was paid on account of his client's judgment, and the property was deeded to a nominee of plaintiff, to assure its proper refinancing by plaintiff. He urgently requested the acceptance of this proposition, and said that if appellant would make the necessary transfers to his, plaintiff's, son-in-law and partner, he, plaintiff, would advance the $10,000 necessary to be paid in order to obtain the stay, would arrange to borrow from a building association, with which he was connected, the sum of $30,000 on a second mortgage, would pay all the encumbrances on the property (except the first mortgage of $70,000, which was to remain undisturbed), and would himself take a third mortgage for the amount due to him, plus a counsel fee of $500, and "six per cent for placing the $30,000 building and loan mortgage, and ten per cent on the money he had to put up." He also said that, if this course was pursued, the property would be reconveyed to appellant after the refinancing was completed, pending which she was to remain in absolute possession of it. Subsequently, the plan was modified by providing for a new first mortgage, for a larger amount than the existing one; appellant's husband negotiated it, at plaintiff's request, because told it was for her benefit.

On the faith of these statements, appellant and her husband, on January 29, 1924, deeded the property to plaintiff's son-in-law, gave to him a bill of sale of "all and singular the goods, chattels, furniture and all other personal property" in the apartments, and also an assignment of all the income thereafter to be paid by occupants of the property. At the same time the son-in-law

signed and delivered a declaration of trust (prepared and the execution thereof witnessed by plaintiff's counsel), in which, after acknowledging the receipt of the foregoing papers, he stated he held the property in trust to pay the current and future operating expenses of the apartments, the taxes, encumbrances, etc., and thereafter for appellant, as the owner "of the equitable interest in the said property, and entitled to the rent or increment received" from it. He also agreed therein to reconvey both the real and personal property to her or her assigns, after the amounts specified had been paid.

In the meantime, one Emanuel Barrick filed a bill in equity, the exact nature of which is not stated, but which prevented the refinancing of the property; whereupon plaintiff urged appellant's husband to negotiate for a purchase of the claim, again stating that he asked this because appellant was the equitable owner of the property. Her husband complied with this request, and $2,700, the amount Barrick agreed to accept, was paid to him, on the day of the sheriff's sale, by virtue of a written order of appellant, out of the rent moneys which her husband had given plaintiff shortly before that date. This sum was hers, as the one ultimately entitled to those rents, when, as in that instance, they were not used for the other purposes specified in the declaration of trust. On being paid, Barrick quitclaimed his interest to plaintiff's son-in-law, the then holder of the title, thus clearing the way for carrying out the settlement arranged.

It will be noticed that, up to this point, no possible question could arise touching appellant's equitable remainder in fee, as well after as before the completion of the proposed refinancing of the property, for the written instrument expressly so declared.

Shortly after the payment to Barrick, and only about an hour before the sheriff's sale was to take place, plaintiff changed front, and his son-in-law, after a conversation with him, telephoned to the attorney for the execu-

tion creditor, that, "for reasons best known to himself, they had decided not to stay the sale, but would bid [the property] in at the sheriff's sale that afternoon." This was said in the presence of appellant's husband, and when he inquired what effect it would have on the arrangement already made, he was assured by plaintiff, that it "would not wipe out or affect the trust," but that, on the contrary, if carried through, would "protect [her] interest in the property." At the sheriff's sale the property was purchased for plaintiff; appellant, because of plaintiff's statements, as above set forth, making no attempt to protect her interest.

At plaintiff's request, also, because, as he again said, the property was ultimately to go to appellant, her husband arranged with the Land Title and Trust Company to examine the title, and, if it was found to be good, to insure it in favor of the proposed new mortgagees, who were to advance the money necessary to make settlement with the sheriff. On examining the record, it was discovered that, although the property had been sold on a fi. fa., inquisition had not been waived, and hence the company refused to issue the necessary policies, unless appellant would execute and file a waiver of inquisition. Plaintiff thereupon said to appellant's husband that "the property had been purchased for [appellant] and they were acting as agent for her under the trusteeship, and [hence it would be] foolish for [her] not to furnish a waiver and stop the return of the sale for the terms of the sale not being complied with." Relying on these statements, appellant executed a waiver of inquisition, post-dating it to precede the time the execution had issued, and it was delivered to plaintiff, who filed it of record, and he was thus able to get from the trust company, whose mortgage was negotiated by appellant's husband, and from the building association, with which plaintiff was connected, the additional money needed in order to settle with the sheriff and obtain title to the property, which was taken in his own name.

A few days after the settlement was made, and in reliance upon his promise, again repeated, that the property was to go to appellant ultimately, she also transferred to him her stock in the building association, under whose execution the sheriff's sale was had, and, by virtue thereof, he at once received $2,850 of her money from that association.

After title had been made to plaintiff, appellant repeatedly endeavored to obtain from him a statement of the account between them, so that she could arrange to make the necessary payments, and get the title back in her own name. She finally received from him, during September, 1924,—some seven or eight months after the sheriff's sale—a written account, in which he attempted to charge her, in addition to the amount he said was due to him, a bonus of twenty per cent thereon, instead of the ten per cent agreed on, and an additional twenty per cent bonus on the total of his alleged claim, including the first named bonus, the amount of the two being $15,817.26. This was, of course, improper; and the amount was also erroneous in that three credits to which appellant was entitled were not given. They were for $2,850 (above referred to), $887.62 and $1,625.93, respectively. For the first two of them, plaintiff then and there gave appellant a written memorandum of their amount. The third was a sum paid by her counsel, but which plaintiff neglected to allow. None of them was disputed.

After the sheriff's sale and his deed to plaintiff, all the parties to this suit treated the declaration of trust as still in force, and appellant's husband collected the income of the property and accounted to plaintiff or his son-in-law for it, in the same way as theretofore. He continued to do this until January, 1925, eleven months after the sheriff's sale, without any denial by plaintiff of the binding effect of the agreement to reconvey to her. During this period, appellant's husband also "used money of his own to help carry the place."

On March 3, 1925,—which was nearly thirteen months after the sheriff's sale,—a third party offered to pay $235,000 for the property. Plaintiff still said that it was appellant's, and produced a written memorandum showing, as he alleged, that $163,000 was the amount necessary to be expended in order to pay the first and second mortgages and the money due to him. He asked appellant to accept $35,000, and allow him to keep the balance of the purchase price, which would have given to him an amount far in excess of the sum he was entitled to under their agreement, and nearly or quite three times the bonus he claimed four months before. Because she refused to agree to this extortion, the sale fell through, and thereafter, for the first time, plaintiff alleged he was the absolute owner of the property.

In entering judgment for plaintiff non obstante veredicto, the court below held that, by the sheriff's deed, he acquired a fee simple estate, in which appellant had no interest, relying for its conclusion on the rule stated in Robertson v. Robertson, 9 Watts 32, 36, and steadily adhered to ever since, viz: "In all cases of fraud, and where transactions [in relation to the purchase of land] have been carried on mala fide, there is a resulting trust by operation of law, but unless there be something in the transaction more than is implied from the violation of a parol agreement, equity will not decree the purchaser to be a trustee." In the instant case, however, the last clause of that quotation does not apply to the facts as we have stated them. Though other reasons might readily be given, we will advert to but two of those which show this to be so, and that plaintiff should be held to the performance of his agreement.

It probably will be conceded that, if a confidential relation existed between plaintiff, as promisor, and appellant, as promisee, in relation to the land in controversy, then "there is something in the transaction more than [is] implied in the violation of a parol agreement"; at any rate, there is abundant authority on the point:

Bartholomew v. Leech, 7 Watts 472; Seichrist's App., 66 Pa. 237; Squires' App., 70 Pa. 266; O'Hara v. Dilworth, 72 Pa. 397, 403; Hatcher v. Hatcher, 264 Pa. 105; Mandole v. Miller, 276 Pa. 131. Under such circumstances, compliance may be enforced although plaintiff himself paid all the purchase money: Bergner v. Bergner, 219 Pa. 113; Bachrach v. Fleming, 269 Pa. 350. He asserts, however, that this principle has no application here, because (1) he had no control of the execution, and, even if held to be a trustee, may purchase at a sale made by others without his connivance; and (2) his son-in-law was the person bound under those authorities, and he, plaintiff, was not. Neither of these contentions can be sustained.

When the execution issued, plaintiff might have bought for himself only; and ordinarily, if nothing else appeared, this would be so although he thereby obtained the property of one towards whom he held a confidential relation: Fisk v. Sarber, 6 W. & S. 18; MacDougal v. Citizens National Bank, 265 Pa. 170. But here that relation arose after the execution issued, and one of its purposes was to protect appellant from the results which otherwise might flow from selling under that execution. Hence, even if nothing else appeared, plaintiff could not obtain a valid title at a sale, from the effect of which he agreed to protect appellant, without giving her express and clear notice of his intention to be no longer bound by his agreement, at a time which would give her ample opportunity to preserve her rights. Nor is there anything in the claim that, since plaintiff's son-in-law was the trustee named in the declaration of trust, plaintiff himself was not affected. Equity is not so blind as this contention presupposes. The son-in-law was indeed the trustee named in the writing, and doubtless would have been debarred from becoming an antagonistic purchaser, because he chose to assume that relation. But plaintiff himself was the one relied on by appellant; he was the one jointly interested with

her; he controlled all that was done; it was at his request, and on his promise to protect her, that she made the transfers of her real and personal property, executed such other papers as he desired, and obtained part of the money required in order to carry out the plan agreed on. To her, therefore, he owed the utmost good faith, and he cannot be permitted to retain a title derived through a breach of that duty.

So, also, the rule upon which plaintiff relies does not help him, for the further reason that when appellant, in good faith, executed and delivered to plaintiff the waiver of inquisition,—which was, or was supposed to be, necessary to validate the title about to be acquired by virtue of the sheriff's sale,—upon the faith of his promise that the title thus to be obtained would be held for her benefit, he estopped himself from making the defense now attempted to be interposed.

Beegle v. Wentz, 55 Pa. 369, is a case quite similar to the present one. There, defendant gave to plaintiff a judgment note containing a waiver of exemption, but nevertheless claimed the exemption when execution was issued against his land. Instead of proceeding to have the claim set aside, plaintiff agreed with defendant that, if the latter would withdraw the claim, and he, plaintiff became the purchaser of the land, he would deed back to defendant the homestead and fifteen acres adjoining it. Defendant thereupon withdrew the waiver, plaintiff obtained title through the sheriff's sale, and afterwards attempted to repudiate his promise. It was decided that he held the homestead and the fifteen acres as trustee for defendant, who could and did recover it in the action of ejectment in that case.

In Boynton v. Housler, 73 Pa. 453, lands of a decedent were about to be sold on an execution, the widow having an interest therein to the extent of her exemption. Her friends proposed to buy the land for her, but plaintiff agreed that, if they would not bid against him, he would convey a specified portion of it to her. They consented

to this and he bought, but later attempted to repudiate his promise. It was held he could not do so.

In Wolford v. Herrington, 86 Pa. 39, a wife held an unrecorded deed for property about to be sold on an execution against her husband, in whose name the record title stood. An intending purchaser stated to the wife that, even if the deed to her was recorded, her title would be a doubtful one, and agreed, if she would allow him to buy the land, he would give her two years in which to redeem it. It was held, irrespective of the question as to whether or not her title by the unrecorded deed would have been good, the agreement was valid and binding. This was approved in Cowperthwaite v. First National Bank of Carbondale, 102 Pa. 397, 402.

It follows that, upon both the foregoing grounds, plaintiff's contention fails; that the statute of frauds does not stand in the way of requiring him to comply with his agreement; and, in view of the jury's verdict, and the trial judge's statement that "the evidence of the parol agreement......was complete, clear and precise" (see Church v. Ruland, 64 Pa. 432; Walker v. Walker, 264 Pa. 68), he should be compelled so to do.

But one thing remains to be considered. Plaintiff is entitled to a proper repayment, before he can be required to reconvey to appellant. Recognizing this, an agreement was made between the parties that, if a verdict should be found in appellant's favor, "the trial judge shall sit and determine the amount due the plaintiff, and the terms upon which it is to be paid and tendered." It was found in her favor, and we now sustain it. The course agreed upon must, therefore, be followed; appellant being entitled to a fee simple deed for the property, clear of all encumbrances, and to a retransfer of the personalty from plaintiff's son-in-law, when she shall have paid the amount ascertained by the trial judge to be due.

The judgment of the court below is reversed, the verdict is reinstated and a procedendo is awarded.