Allen et al. *v.* Sarshik (et al., Appellant).

258

Argued January 7, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*A. L. Shapiro,* with him *Harry Shapiro,* for appellant. —Covenant or future promise does not constitute a representation: Hooversville Bank v. Sagerson, 283 Pa. 406; Murphy v. Pinney, 86 Pa. Superior Ct. 458; Homewood Peoples Bank v. Simon, 279 Pa. 118; Humphrey v. Brown, 291 Pa. 53; Lowry Nat. Bank v. Hazard, 223 Pa. 520; Miller v. Fulmer, 25 Pa. Superior Ct. 106; Thorne, McFarlane & Co. v. Warfflein, 100 Pa. 519; Smith v. Smith, 21 Pa. 367.

Failure to perform a covenant raises no presumption that intent not to perform it existed at its inception: Homewood Peoples Bank v. Simon, 279 Pa. 118.

Performance may have been intended though contract subsequently not performed: Grove v. Hodges, 55 Pa. 504; Lowry Nat. Bank v. Hazard, 223 Pa. 520.

Fraud cannot be predicated on an act equally consistent with innocence: Potts v. Phila., 195 Pa. 619.

The legal presumption is against fraud: Stauffer v. Young, 39 Pa. 455; Messinger v. Hagenbuch, 2 Wharton 410; Com. v. R. R., 74 Pa. 94.

*D. P. Hibberd,* with him *Frysinger Evans* and *Edgar C. VanDyke,* for appellees.—The findings of fact made by the chancellor, if based on evidence and approved by the court below, must be given the same weight as the verdict of a jury and will not be disturbed on appeal: Glenn v. Trees, 276 Pa. 165; Miller v. Trust Co., 285 Pa. 472; Haughton v. Kendrick, 285 Pa. 223: Kern v. Smith, 290 Pa. 566, 569.

It seems that generally a misrepresentation of present intention is actionable fraud: Bughman v. Bank, 159 Pa. 94.

Later Pennsylvania cases demonstrate that the basic rule of the actionable character of a misrepresentation of a material present intention is fully recognized in this jurisdiction: Williams v. Kerr, 152 Pa. 560; Standard Elevator Co. v. Wilson, 218 Pa. 280; Lafean v. Am. Carmel Co., 271 Pa. 276; Fidelity-Phila. Trust Co. v. Simpson, 293 Pa. 577.

OPINION BY MR. JUSTICE SIMPSON, January 27, 1930:

Morris A. Sarshik, one of the defendants, by the ownership of at least four-fifths of its capital stock, controlled Morris A. Sarshik, Inc., the other defendant, hereinafter called the corporation. Each of them was in the real estate business, and, at least so far as concerns the transaction hereinafter detailed, the corporation seems to have been nothing more than a cloak behind which Sarshik endeavored to hide. In order to obtain title to an apartment house belonging to plaintiffs, Sarshik induced them to agree to sell it and the fire insurance policies on it, to one George A. Pennypacker, a straw man for Sarshik, though pretending to be so for the corporation, for the sum of $305,000, $250,000 of which was represented by two existing mortgages, $50,000 was to be a third mortgage to be given by Pennypacker to plaintiffs, and $5,000 was to be a cash payment. The agreement of sale, which was prepared by or for defendants, further provided that the taxes and

interest on existing mortgages, should be apportioned to the date of settlement. To induce plaintiffs to sell on these terms, the agreement also stated that, as "an independent covenant [which] shall survive the settlement and not be merged with the deed," Pennypacker would "assign irrevocably to Sarshik all leases now existing or hereafter in effect upon said premises, and irrevocably constitute Sarshik as agent for the collection of rentals therefrom, for the following purposes: To pay, from the said rentals, the taxes, water rents, repairs and interest on first, second and third mortgages, after deducting five per cent commission on the rents collected."

When settlement was made, it was found that, on apportioning the mortgage interest, taxes, etc., to that date, defendants were entitled to receive from plaintiffs the sum of $7,845.53 in order to enable the former to comply with the agreement to pay the interest on the prior encumbrances when and as they fell due. Plaintiffs thereupon gave a check to Pennypacker for the $2,845.53 in excess of the $5,000 cash payable at settlement, and he at once endorsed it to the corporation, which received its proceeds. Though the $7,845.53 was far in excess of the interest necessary to be paid on the second mortgage at the time it first became due, defendants did not pay it, and by reason of this default the mortgage was foreclosed, the property sold by the sheriff, and plaintiffs lost everything and received nothing.

Claiming that the whole transaction was a scheme to cheat and defraud them, plaintiffs filed a bill in equity against Sarshik and the Corporation, and the court below decreed that they should presently repay plaintiffs the $7,845.53 and should account for the rents they had collected; but refused to charge them with the amount of the $50,000 mortgage, or any part thereof. Without filing an account, Sarshik, forthwith prosecuted the present appeal, and seeks thereby to have us now review

so much of the decree as requires payment of the $7,-845.53. We have no doubt as to the correctness thereof, and of the jurisdiction in equity to pass on the question. Fraud is one of the principal heads of equity jurisdiction, and the right to so proceed cannot be attacked in this case, since defendants did not seek to have the question decided in limine, as required by the Act of June 7, 1907, P. L. 440: Wright v. Barber, 270 Pa. 186; Crystal Amusement Co. v. Potter Title & Trust Co., 281 Pa. 47.

Admittedly, if the finding by the court below, that defendants were guilty of fraud, has sufficient evidence to sustain it, the portion of the decree now under review is correct; but appellant contends that this conclusion is predicated entirely on the basic finding that defendants purchased and received the $7,845.53 with a present intention not to pay the interest on the existing mortgages when they fell due. If this were all there was in the case, Smith v. Smith, Murphy & Co., 21 Pa. 367, and kindred authorities, which hold that such a present intent would not alone sustain a finding of fraud, would have to be considered; but it is not all. In Bughman v. Central Bank, 159 Pa. 94, 97, we said: "A purchase with a present intent not to pay is a rank fraud in morals, and should be so pronounced in law. The departure that was made in Smith v. Smith, [Murphy & Co.] is therefore much to be regretted. It was not made by a unanimous court, nor has it ever received the unmixed approbation of the bench or the bar. But it has been expressly followed in several cases, and has remained in the books without being overruled, for forty years, and recognizing that the subject is one on which legal minds have always been apt to differ, we do not think it wise now, notwithstanding our own clear convictions on the principle, to unsettle the law by another change. We will therefore stand on the authority of Smith v. Smith and its kindred cases, but we will not go a step beyond what they require. Any additional

circumstance which tends to show trick, artifice, false representation, or, in the language of Smith v. Smith itself, 'conduct which reasonably involves a false representation,' will be sufficient to take the case out of the rule of those authorities...... How little additional is required to make them sufficient is illustrated in Harner v. Fisher, 58 Pa. 453, where it was held that a creditor employing an agent to buy a horse from the debtor as if for himself, but with the prearranged scheme to pay for it with the creditor's claim, was such a fraud as prevented the passing of the title. The distinction in morals between getting a man's horse by a nominal purchase, with an intent to pay for it by the seller's own due bill, and getting it with intent not to pay at all, is thin, and the advantage rather seems to be with the first method as the less dishonest of the two. But Chief Justice THOMPSON after referring to Smith v. Smith said the scheme was a poor excuse for a fraud that vitiated the whole transaction."

In the instant case there are sufficient "additional circumstances" to justify the conclusion of the chancellor that fraud was shown, but it is not necessary to detail them, since the law is clear that defendants are legally bound to repay the $7,845.53, entirely aside from their fraud and deception at the beginning of the transaction. That sum, as already shown, was given for the specific purpose of being used, if necessary, with the rents collected (here they were not needed, in paying mortgage interest and taxes when they should become payable, in order that plaintiffs' $50,000 mortgage might be protected from discharge by foreclosure of one of the prior mortgages. This defendants must have known. It is made particularly clear by the "independent covenant" above quoted, though, in form, but a covenant by the straw man. Equity looks through forms to substance, however: (Texas v. Hardenberg, 77 U. S. 68, 89) and hence defendants will not be permitted to appropriate the money to their own use, instead of apply-

ing it to that purpose, whether the intention not to so apply it arose in the beginning of the transaction or subsequently.

Admittedly there would have been no foreclosure of the second mortgage if defendants had expended the money as they should have done; and admittedly the failure to so use it resulted in plaintiffs' $50,000 mortgage being discharged as a lien on the property. Equity would become iniquity, therefore, if it did not require, as the chancellor has done, that at least the $7,845.53 be repaid to plaintiffs. Equity is not subject to this reproach, however, since, as has often been decided, the facts here existing raise a constructive trust in favor of plaintiffs. Perhaps the applicable principle has never been more tersely stated than in Lyon v. Marclay, 1 Watts 271, 275, where it is said that "a person who receives money to be paid to another, or to be applied to a particular purpose, and does not pay it to the person, or apply it to the purpose intended, is a trustee and suable either in law or equity." This rule was again stated in the same language in Finney v. Cochran, 1 W. & S. 112, 118; and it is, in principle, restated in Beegle v. Wentz, 55 Pa. 369, 374, where it is said "The trust in such cases arises ex maleficio, on the principle that equity will not permit one to deprive another of a title he actually has, by such a promise not intended to be performed"; and also in Boynton v. Housler, 73 Pa. 453, 458.

The decree of the court below is affirmed so far as concerns the questions raised on this appeal, and it is dismissed at the cost of appellant.