## Morey *versus* Herrick.

18    123
f218    ¹630.

1. A. and B. agreed to purchase together a tract of unseated land at treasurer's sale, and A. requested a person to become security in a note to the treasurer for the purchase-money. A. paid one-half of the amount of the note, and during the lifetime of B., A. paid one-half of the taxes. For several years the one-half of the tract was assessed in the name of A. and the other half in the name of B. The latter had possession of the south half of the land, and declared that he and A. had agreed on a division; that he himself was to have the south half, and A. the north half. After the death of B., his heirs conveyed the whole tract to C. The latter permitted the land to be sold for taxes, and had it purchased by D., who subsequently conveyed to E., under whom the defendants claimed. Before the conveyance to C., one of the heirs of A. had a small improvement on an adjoining tract, and on a small portion of the tract in dispute, which was made during the life of B.:

It was *held*, that as between the original parties, A. and B., *a trust* existed; but there not being evidence of notice by C., before his purchase of the title of A. or his heirs, the said heirs could not recover the one-half of the land.

2. The mere assessment and payment of *taxes* is not evidence of legal or equitable title, and therefore does not convey notice of its existence.

ERROR to the Common Pleas of *Elk county*.

This was an action of ejectment, brought by Erasmus Morey and others against Samuel Herrick and others, for 528 acres of land in Benezette township, Elk county, being the *north* half of a tract surveyed on warrant No. 5482, granted to George Mead, containing 1056 acres, and known as the Ketland lot. The plaintiffs were the heirs at law of Leonard Morey, deceased, and claimed the land as such. Both parties, plaintiffs and defendants, claimed under the same title, viz., a deed in 1822, from the treasurer of Clearfield county, in which the land was then situated, to *Ichabod Powers*. The plaintiffs claimed that under the circumstances disclosed in the evidence, Ichabod Powers was but the trustee of the legal title, for their ancestor, Leonard Morey, as to the land in dispute, viz., the north half of the Ketland lot No. 5482. In 1822, the whole of the tract was advertised for sale by the treasurer of Clearfield county for taxes, and the plaintiff's father, Leonard Morey, being unable to attend the sales himself, agreed with Ichabod Powers, that the latter should bid off the lot for their mutual benefit, under an arrangement that each should contribute half of the purchase-money and expenses, and own half the land. Powers did as requested. The custom then was, to give notes, payable at a future time, with security, for lands purchased at treasurer's sale. Morey asked John S. Brockway, who was going to the sales, to sign the note with Powers, and he did so at the request of Powers. The note was found in possession of Morey, and produced on trial by the plaintiffs. Brockway signed the note at the request of both Morey and Powers. The note was under seal. Powers admitted that Morey had furnished his half, and even more, of the funds to pay the note, and afterwards, during the life-

[Morey *v.* Herrick.]

time of Powers, and by his knowledge and consent, Morey paid half the taxes. The assessments given in evidence showed the one half of this lot to have been *assessed to Morey* and the other half to Powers for the years 1826, 1827, 1828, 1829, 1830, and 1831. Subsequent to this, Morey and his heirs always paid the taxes on the *north* half of the lot, on the unseated list.

Powers, during his life, declared, how they owned and how they had divided the land. He died in the fall of 1827, *in the actual possession of the south half of the lot,* in the observance of the original agreement, as declared by himself a few days before his death. Powers left no children, but had several brothers and sisters residing in the northern part of the state. In 1831, Joseph Chandler was in the neighbourhood, acting as the administrator of Ichabod Powers. Aug. 25, 1834, he procured a deed from the heirs of Powers for this tract of land, for $840. He permitted the land to be sold for taxes in 1836, and had it bid in for himself by Andrews, "to extinguish Morey's claim," as declared by himself. From this sale, Morey redeemed his half of the land. It was admitted, that Chandler conveyed the whole tract to Andrews in 1841. Andrews conveyed to A. S. Lippencott on the 31st of August, 1841. On the day preceding, viz., the 30th of August, A. D. 1841, Andrews had brought an action of ejectment against Reuben Lewis and Leonard Morey, in the Common Pleas of Clearfield county, for the entire tract. The writ was served, and after the cause was at issue and had been twice on the trial list, it was discontinued by the plaintiff.

The *defendants* were purchasers under articles of agreement from A. S. Lippencott, no deed having been given nor the purchase-money paid when this suit was brought.

In the course of the trial, the plaintiffs offered to prove, by John S. Brockway, the declarations of Andrews, made before he owned the property, that he knew of the plaintiff's claim to the land. This was objected to by defendant's counsel; the evidence was rejected, and exception by plaintiffs' counsel.

*Plaintiffs then gave in evidence receipts to Leonard Morey for the taxes on the entire lot for the years* 1822, 1823, 1824, *and* 1825.

*A certificate from the records of Clearfield county, showing the assessment of this lot on the seated list, from* 1826 *to* 1831, *inclusive, the one half to Powers and the other half to Morey.*

Receipts to Leonard Morey for the payment of the *taxes on the north half of said lot for the years* 1836, 1837, 1838, 1839, 1840, 1841, 1842, *and* 1843.

Receipt for the redemption of half of this lot from the Treasurer's sale of 1836.

To affect the defendant's vendor with notice, the plaintiffs offered a lease, dated April 1, 1840, for the north half of this lot, by

[Morey *v.* Herrick.]

Erasmus Morey, attorney in fact for his father, Leonard Morey, to Reuben Lewis. Offered in connection with evidence, that Erasmus Morey acted as agent for his father, then in Massachusetts, and also that the tenant went into possession in pursuance of it. To which offer, the defendant's counsel objected. Evidence rejected, and exception by plaintiff's counsel. This was the *second* bill.

Plaintiffs then proved by E. C. Winslow, that Reuben Lewis occupied the north half of this tract two years in 1840 and 1841; and by R. C. Winslow, that Reuben Lewis occupied that improvement on this lot, under E. Morey; "he told me in 1842 or 1843 he rented it from Erasmus Morey."

On the part of the plaintiffs, various points were submitted:

1. That a trust in real estate may be created and proved by parol declarations of the grantee, at the time and subsequent to the acquisition of the title.

2. That if the jury believe from the evidence that Ichabod Powers purchased the land in question at treasurer's sale, under the arrangement that he and Leonard Morey were to be joint owners of it, and to be at equal expense in the purchase and payment of taxes for the same, and that agreement was subsequently recognised and acted on in good faith by the parties, then Ichabod Powers was only trustee of the legal title as to one moiety for Leonard Morey.

3. That if the jury believe Powers and Morey agreed on a division of the tract, and each took possession and occupied their respective portions according to it, although in parol, said division was good as between the parties to it and all claiming under them.

4. That if the jury believe the respective owners of the title, prior to their respective purchases, had each sufficient notice of the claim of Morey to put a prudent man upon inquiry as to what it was, they are to be held as purchasing subject to whatever title Morey had.

5. That from all the evidence in the case the plaintiffs are entitled to recover.

BUFFINGTON, J., answered as follows:—"1. A trust estate created and proved by parol alone, is within the statute of frauds and perjuries, unless it be a resulting trust, arising from the fact that the money was furnished and paid by the *cestui que trust;* but if a purchase be made by a man who takes the title in his own name, and pays the money out of his own pocket, or agrees to pay it, his declarations, made at the time and subsequently, that he purchased for another, are within the statute and void.

"2. If the jury believe the facts stated in this point to be true, they would amount to an agreement by parol that Morey would be entitled to one-half the property, and if there were evidence

[Morey *v.* Herrick.]

clear, unambiguous, distinct, and definite of the contract, accompanied by clear evidence of the payment of one-half the purchase-money by Mr. Morey, and also followed up by the taking of possession on the part of Morey, in pursuance of the agreement and the making of valuable improvements, then it would be enforced in equity; but the facts stated in the point, unaccompanied by evidence of the taking possession and improvements, would be within the statute of frauds, and whether trustee or purchaser is not material.

" 3. The law is correctly stated in this point.

" 4. This point is answered in the affirmative, with some explanations.  If Chandler had no notice, then the subsequent purchasers, though they or any of them knew of the outstanding equity, would take his title discharged of the trust.  If Chandler had notice, either of the subsequent purchasers, Andrews or Lippencott, if they purchased for a valuable consideration without any notice, would take discharged of the trust.

" 5. We cannot answer this point as requested.

" Another point has been raised by defendant's counsel, which, as the cause may undergo a revision, it is proper to notice.  It is contended that Chandler and those claiming under him are purchasers of the legal title for a full and valuable consideration without notice of the trust in Morey.  Notice may be either actual, legal, or constructive.  As this trust rested in parol, it was not susceptible of being recorded, and, of course, there was not legal notice.  Constructive notice may be where the holder of the equity *is in the actual possession*, and the law imposes the duty on a purchaser, to inquire by what authority he is there.  The only evidence of possession prior to the purchase by Chandler was the small improvement by Erasmus Morey, partly on the Potter tract and a small portion on this tract, some time prior to the time Powers took possession.  This improvement, according to the testimony of E. C. Winslow, had been abandoned before 1827, was grown up with bushes, the fences down, and nothing of a building left but the remains of an old pig-pen.  And so it remained till the time of the purchase by Chandler in 1834.  This would not be sufficient to put a purchaser on inquiry and affect him with constructive notice.  There was nothing in his position as administrator to affect him with notice, and there was no evidence of his having actual notice *prior* to his purchase from the heirs.  He, Chandler, is to be viewed as a purchaser without notice.  That Andrews had notice, is probable, and there is evidence to prove the fact.  But *Lippencott*, who bought from him for $1000 on the 31st Aug. 1841, seems to have had no knowledge of the Morey claim until informed of it by Winslow at Harrisburg.  This, as actual notice, would be insufficient, as coming too late, and by a person whose information he was not bound to

[Morey v. Herrick.]

regard. Lewis, it is true, was in possession about the time Lippencott purchased, but whether before or after, or under whom, is left so uncertain that it would not amount to constructive notice.

"Chandler and Lippencott being therefore purchasers *bonâ fide*, for valuable considerations, without notice of the Morey claim, would take the legal title discharged of the alleged trust.

"Viewing the case, then, as we do, as an application to a Court of Chancery to enforce the execution of a parol agreement after a lapse of upwards of twenty-five years, and near twenty years from the death of the purchaser of the legal title, and several years after the death of the alleged *cestui que trust*, wherein his heirs seek to recover from the defendant, after it has come to him through the hands of at least two purchasers for valuable considerations without notice, we are of opinion, and so instruct the jury, that the plaintiffs are not entitled to recover, and the verdict ought to be for the defendant."

Error was assigned to the rejection of the evidence as to Andrews's declarations; and to the rejection of that referred to in the second bill of exceptions.

3. The Court erred in their answers to the 1st, 2d, and 5th points put by plaintiff's counsel.

4. The Court erred in their general charge in saying that the evidence in the cause "did not make such a case as is excepted from the statute."

5. The Court erred in saying in effect that the title became complete in Powers to the whole tract on his receiving the deed and giving his note with Brockway for the purchase-money.

6. The Court erred in instructing the jury that under the evidence the plaintiffs were not entitled to recover.

*Brown*, for plaintiffs in error.

*Petriken*, for defendants.—Whatever may have been the understanding between Powers and Morey, at the time of the purchase of the land, that which is proved is contradictory and indefinite; Powers purchased the land at treasurer's sale, and gave his note for the purchase-money with J. S. Brockway as bail; Brockway became bail as much at the request of Powers as of Morey; the treasurer's deed to Powers was of the same date as that of the note; Ichabod Powers was the only man who, after that, had actual resident posession, until Lippencott took possession in the fall of 1841; the possession of Erasmus Morey was of fifty acres on an adjoining survey; and that of Reuben Lewis also; Lewis went there as tenant of his father, Thomas Lewis.

There never was any division of the land between Powers and Morey, by marks upon the ground.

[Morey *v.* Herrick.]

The opinion of the Court was delivered, Oct. 23, by

BELL, J.—Although, in one aspect, the averred trust would seem to fall within the circle of cases which declare a trust cannot be the offspring of a naked declaration by a purchaser that he is buying for the benefit of another, we are strongly impressed with the opinion that enough was shown in this case, to constitute Powers and those claiming under him with notice, trustees, either upon the ground of fraud, or by way of implication resulting from the application of Morey's money in completion of the purchase, wholly or partially. As that part of the English statute of frauds which prohibits the parol declaration of a trust was not transferred to our Act on the same subject, an express trust in lands may, with us, be orally declared. But after some vacillation of decision, or rather of *dicta,* which for a time unsettled the professional mind, it is agreed that a simple avowal of acquisition for the use of another, whether made contemporaneous with, or subsequent to the fact, will not of itself support an allegation of trust: Robertson *v.* Robertson, 9 *Watts* 32. Yet it is equally well settled, that if one be induced to confide in the promise of another that he will hold in trust, or that he will so purchase for one, or both, and is thus led to do what otherwise he would have forborne, or to forbear what he contemplated to do, in the acquisition of an estate, whereby the promissor becomes the holder of the legal title; an attempted denial of the confidence is such a fraud as will operate to convert the purchaser into a trustee, *ex maleficio.* One of our earliest decisions under this head, is Thompson's lessee *v.* White, 1 *Dal.* 424, where, to induce a wife to execute to him a conveyance of her estate, the husband promised, by will or otherwise, to settle an estate for the benefit of the wife's relatives, in the manner previously agreed on. He died without performing his promise, and this neglect was ruled to involve such a fraud as raised a trust in favor of the disappointed relations. Stewart *v.* Brown, 2 *Ser. &* *R.* 461, and Brown *v.* Dysinger, 1 *R.* 408, were decided upon the same principle. In both, the complainants had trusted to the promise of another to purchase at public sale, certain land, for the benefit of the promissee; and it was held, that a subsequent denial of the undertaking converted the promissor into a trustee for him who had been deceived. The ground was that *mala fides* in the prosecution of the undertaking, inflicting a disappointment which otherwise might have been avoided by the confiding party, raised a trust commensurate with the undertaking. It is true, that, in the first of these cases, the plaintiff and defendant had been tenants in common of the land, which gave the former the benefit of another principle; but the Court also put the determination on the ground of faithlessness, as creative of a trust, necessary to defeat fraud. In delivering the judgment in the later determination, Mr. Justice SMITH observed, "No doubt Samuel Brown was induced by David Walker to rely on him, and therefore did not

[Morey v. Herrick.]

take any other steps to secure the land, and David Walker should not reap the benefit of such conduct; nor can he, for a trust thereby arises to Samuel Brown, for whom he becomes a trustee. To decide otherwise, and to allow him to hold the land, under such circumstances, would be supporting a breach of trust, and a fraud in law."

The still more modern case of Kisler v. Kisler, 2 *Watts* 323, though in its general aspect restrictive of parol trusts, is in affirmance of this doctrine. It concedes, that had the ward, plaintiff, trusted to his late guardian's promise to purchase the land for him, there would have been a trust *ex maleficio*, from the conduct of the guardian in keeping the ward back as a bidder; and observes, that such a trust was enforced in Brown v. Dysinger, arising from the artifice of the party to be affected.

In applying these ascertained principles, it is impossible not to be convinced, that, upon the suggestion of the elder Morey, who was unable to attend the proposed sale, Powers undertook to purchase the tract in dispute for himself and Morey, the latter, who was the richer of the two, agreeing to procure the requisite security, and eventually to supply the necessary funds. That Morey trusted to Powers's promise is plain; and I think it is not to be doubted, that, but for that promise, he would have taken other steps to carry out his determination to purchase. It is equally plain, that Powers discharged his undertaking in good faith, and that, ever afterwards up to the death of the latter, each regarded the other as owner of one moiety of the tract. That they were so esteemed in the neighborhood, is put beyond question by the oral evidence and the assessment for taxes for a long series of years. Under such circumstances, to permit the heirs or alienees of Powers, with notice, to repudiate the arrangement, would be such a fraud as equity interposes to prevent, by raising a trust predicated upon the dishonest attempt.

I think, too, a trust would be declared on another ground, irrespective of the express undertaking by Powers. It is in proof, by his confession, that the greater part of the purchase-money was furnished by Morey. Had this been handed to Powers, and actually employed by him at the time he made the purchase, beyond question there would have resulted a trust in favor of his fellow, to the extent of the fund supplied by him, for it is clear such a trust may be *pro tanto:* Duffield v. Wallace, 2 *Ser. & R.* 521; Kisler v. Kisler. But what difference can it make that eventual payment was secured by a promissory note, made, in part at least, on Morey's credit and at his request? None whatever. It cannot be doubted that he was bound to the surety he procured to discharge it when due, and it is proved he did so. He is, therefore, to be regarded as though he had been actually a party to the note, and the subsequent payment of, at least, a moiety of it is reflected back to the inception of the purchase.

[Morey *v.* Herrick.]

Yet the plaintiffs must fail in this action.  What has been said upon the point just dismissed, was elicited by the wish of the parties to have an expression of our opinion, and in reference to any future suit which may be instituted.  Another question necessarily made below is, whether all of the successive alienees of the legal title had notice of the trust ? for lacking this to any one of them, defeats the trust as to each who succeeded to the title.  On this subject, we agree with the Court below, and adopt the answer returned by it, as to Chandler.  Possibly Lippencott might be affected by notice *lis pendens*, but I have failed to perceive the slightest evidence of notice to Chandler, for it cannot be pretended he would derive the necessary knowledge through his office of administrator.  He seems to have been aware of Morey's claim in 1836, but this was after he became owner of the title.  The mere assessment and payment of taxes has never been held evidence of legal or equitable title, and therefore could not convey notice of its existence.  It is highly probable Chandler knew the fact, but the record presents no legal evidence of it.

I have thus considered the only subjects discussed on the argument, and the result is, the judgment must be affirmed:

Judgment affirmed.