McCully et ux. *v.* Flanagan et al., Appellant.

Argued April 17, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and GRAFF, JJ.

*Thomas L. Kane,* for appellant.—Complainant, having paid the purchase price, became the owner of the properties: Bigley et al. v. Jones, 114 Pa. 510; Strimpfler v. Roberts, 18 Pa. 283; Beck v. Uhrich, 13 Pa. 636.

The fraud and bad faith of respondent made him a trustee ex maleficio for complainant: Modern Baking Co. v. Orringer, 271 Pa. 152; Rice v. Braden, 243 Pa. 141; Kern et al. v. Smith et ux., 290 Pa. 566.

*Ben Paul Brasley* of *Brasley, Rubin, Balter & Cole,* and with him *F. A. Ammon,* for appellee, cited: Hardinge v. Kuntz, 278 Pa. 232; Jourdan v. Andrews, 258 Pa. 347.

OPINION BY BALDRIGE, J., July 10, 1930:

This bill in equity seeks to have J. C. Flanagan declared a trustee ex maleficio for H. J. McCully as to all the undivided one-half interest in two pieces of real estate described in the bill, hereafter referred to as the Remington property, located on West Liberty Avenue, Nineteenth Ward, Pittsburgh, and the Eberhardt property, located at East and Milroy Streets, Twenty-sixth Ward, Pittsburgh; to compel the conveyance of the one-half interest therein by J. C. Flanagan and Florence Mae Flanagan, his wife, to H. J. McCully; to order an accounting for all moneys received by Flanagan for or on account of said properties; and to pay the plaintiff such sum of money as shall be found to be justly and legally due him.

The lower court ordered that Flanagan pay McCully $1,551.44, being the aggregate of the fraudulent and excessive amounts found to be due by him to McCully, and that Flanagan execute a release for $1,000 claimed by him as a balance due on the purchase price of the Eberhart property. The other prayers of the plaintiff were refused. Appeals were taken by both McCully and Flanagan.

The chancellor found that about November 19, 1920, H. J. McCully, one of the plaintiffs, and J. C. Flanagan, one of the defendants, orally agreed to purchase the Remington property, each to contribute one-half of the purchase money. Flanagan represented to McCully that the purchase price was $3,000 and it was agreed that he should contribute $1,500. Negotiations were proceeded with by Flanagan for himself and as representative of McCully. Flanagan, in January, 1921, entered into an agreement, in writing, to purchase in his own name, in consideration of $1,300, the Remington property, which he assigned to Wyndham Sparling, as a dry trustee for himself and McCully. The Remington property was deeded to Sparling, who, with his wife, conveyed it to Flanagan and McCully for the consideration of $1 and other good and valuable consideration. McCully gave his check to the order of Flanagan, in the sum of $1,523.20, in payment of the $1,500, his one-half of the supposed price of $3,000, plus $23.20 as his one-half of the expenses of the transaction. Flanagan had previously paid $100 to bind the bargain, which is the only money of his own that he paid in this transaction, and paid the balance of the purchase price of $1,200 with the McCully money, and received the deed to Sparling and placed thereon United States revenue stamps in the amount of $3, for the purpose of importing a consideration of $3,000. Flanagan appropriated to his own use the $200 paid by McCully over and above the amount necessary to pay the purchase price.

In March, 1925, McCully and Flanagan agreed, orally, to purchase a piece of real estate, known as the Eberhardt property, each to contribute one-half of the purchase money. Flanagan represented to McCully that the purchase price was $10,000, payable by a $6,000 purchase mortgage and $4,000 in cash. It was agreed that each should contribute $2,000 to make up the cash payment. A deed for this property, under

an agreement between Flanagan and McCully, was executed and delivered for the consideration of $1 to Oliver N. Lynn, who executed purchase money mortgage of $6,000, which was later recorded. On June 16, 1925, Lynn conveyed the property to Flanagan and McCully for the consideration of $1 and other good and valuable consideration. On that date, Flanagan told McCully that it was not necessary for him to be present at the completion of the purchase as he would attend to it himself. Instead of the purchase price being $10,000, it was $7,500 and the cash payment to be made above the $6,000 mortgage was $1,500, instead of $4,000 as Flanagan had represented. Flanagan submitted to McCully a statement of the purchase of this property showing $10,000 as the purchase price and that $10 had been paid for United States revenue stamps for the deed, to convey the impression that the consideration was $10,000. After deducting the $6,000 mortgage and items of taxes and expenses, there was an apparent balance of $4,093.53, of which each was to pay one-half, or $2,046.76. McCully gave his check to Flanagan for $1,046.76 on account, the remaining $1,000 to be paid later. The $1,500 cash purchase money that was actually paid for the Eberhardt property was made up by the $200 balance of McCully's money that Flanagan had retained from the purchase of the Remington property, $1,000 out of McCully's check of $1,046.76, and $300 out of a commission of $375, which the Flanagans received from the Eberhardts for making the sale.

In both of these purchases, Flanagan acted as the representative of McCully who had implicit faith and confidence in him, and at the same time he was acting in each instance, without McCully's knowledge, as the agent of the vendors of the properties. On July 27, 1925, Flanagan mortgaged the undivided one-half of the Remington property for $8,000 and received $7,600, net proceeds, which amount he retained, and the mort-

gage remains unsatisfied. On August 20, 1925, at the suggestion of Flanagan, and without any consideration, Flanagan and his wife and McCully and his wife transferred both of these properties to William R. McCommon, as dry trustee, who, with his wife, Frances V. McCommon, by deed, dated and recorded and without consideration, transferred the same property to H. J. McCully and Mary V. McCully, his wife, and J. C. Flanagan and Florence Mae Flanagan, his wife.

The lower court found that although Flanagan was guilty of fraud, it would be too drastic to impose a penalty requiring him to forfeit the corpus of the estate, and that a restitution of ill-gotten profits would be adequate punishment on the theory that he was acting for himself as well as an associate in a common enterprise. We do not agree with that conclusion. A resulting trust was established and Flanagan was a trustee ex maleficio: Strimpfler v. Roberts, 18 Pa. 283. In Morey v. Herrick, 18 Pa. 123 (128), Judge Bell, in discussing the creation of trusts, said, "Yet it is equally well settled, that if one be induced to confide in the promise of another that he will hold in trust, or that he will so purchase for one, or both, and is thus led to do what otherwise he would have forborne, or to forbear what he contemplated to do, in the acquisition of an estate, whereby the promissor becomes the holder of the legal title; an attempted denial of the confidence is such a fraud as will operate to convert the purchaser into a trustee, ex maleficio."

It is true that Flanagan contributed his services but it was not agreed between the parties that he was to receive a greater interest than that for which he paid; each was to be a one-half owner on the same financial basis. Although Flanagan owed the utmost good faith to McCully, he wilfully deceived him in his false statement of the true consideration to be paid for these properties and is not entitled to derive any advantage or profit from the transaction in which he was guilty

of a flagrant breach of his duty. He may not now be permitted to retain title which he acquired only through a deception (Cameron v. Townsend, 286 Pa. 393 (402); Love v. Clayton, 287 Pa. 205 (213), as equity will not permit him to enjoy the fruits of his fraud: Frazier v. Foreman, 269 Pa. 13 (16); Cameron v. Bank of Maytown, 297 Pa. 551. He was "a wrongdoer and the law always turns a deaf ear towards him; it is swift, however, to hear, and quick to aid, the one who has been wronged": Geary v. Schwem, 280 Pa. 435 (439). Nor does the temporary advancement by Flanagan of the $100 hand money in the Remington deal give him a title or defeat the enforcement of the trust: Kern v. Smith, 290 Pa. 566 (570).

No consideration was paid for transfer of the legal titles to McCommon and the reconveyance to Flanagan and his wife and to McCully and his wife did not affect the trust estate, as equity will follow the fund through every transmutation and wrest it from the wrongdoer: McLaughlin v. Fulton, 104 Pa. 161 (171). "A trust once established, the liability of the trustee would follow the trust asset through every exchange of form:" Simonds' Est., 201 Pa. 413 (417); Frazier v. Foreman, supra; Cameron v. Bank of Maytown, supra. McCommon was not a bona fide purchaser, without notice, who paid a full and fair price, and he does not have any rights that are prejudiced: Meyer v. Safe Deposit & Trust Co., 230 Pa. 106.

The lower court relied on Yeaney v. Keck, 183 Pa. 532, to sustain its decree in denying McCully's claim of right to take the land with its profits rather than the money, but in that case the plaintiffs filed a bill for an accounting. Yeaney sought only to recover the excess money, with interest, that he paid for his interest in the land. It was to his advantage so to do as the money interest was greater than the value of the land. But that case does not hold that the injured party cannot elect his remedy. Although the property acquired

may have enhanced in value by the personal efforts and attention of Flanagan, that does not condone his frauds or entitle him to the payment of a share of the rents, or to the benefits of the enhancement of the property paid for by McCully. That would be placing a premium upon artifice and deception, and if that be so, ''he will hold it as an indemnity against loss resulting from his own dishonesty, and a rule will go out that a man may gain, but cannot lose, by his fraud— that if he succeeds in it, he will reap the fruits of it, and, if detected and halted, will be entitled to a return of his ill-spent money. That this cannot be in a case of actual fraud is so well settled here and everywhere that reference is hardly called for to any of our many cases upon the subject:'' Luther v. Luther, 242 Pa. 530 (533).

Flanagan in his appeal contends that the conduct of McCully between September, 1925, when the misrepresentations were made, and the time of instituting this suit, bars him from the redress he seeks. It is true that McCully, without objection, permitted Flanagan to obtain leases for the properties and did not then assert the rights which he now claims. But in order for one to be estopped, he must have full knowledge of his rights: Daley v. Iselin, 218 Pa. 515 (518). Acts or declarations founded upon ignorance of one's rights cannot have the effect of creating an estoppel: Bittner v. Quemahoning Coal Co., 271 Pa. 579 (582); Osterling v. Frick, 284 Pa. 397 (405). This contention is, therefore, unavailing as the court found McCully did not have knowledge of his rights until April, 1927, and then promptly brought this action. There is absent also the essential element of estoppel that the party relying upon the doctrine must have been misled to his injury: Spiese v. Mutual Trust Co., 258 Pa. 414 (419); Montgomery Bros. v. Montgomery, 269 Pa. 332. ''A wrongdoer is without standing to compel the person wronged to make election between a ratification of his

wrongful act or a repudiation of it:" Gervis v. Kay, 294 Pa. 518. "Doors are shut against one, who, in his prior conduct in the very subject-matter at issue, has violated good conscience, good faith or fair dealing:" Orne v. Coal Co., 114 Pa. 172 (182); Reynolds v. Boland, 202 Pa. 642 (648). If Flanagan has a one-half interest in these properties, he is placed on the same footing as the one who paid the entire consideration. We cannot approve of that proposition. Such a result shocks our sense of justice and places a premium on a positive fraud.

As none of Flanagan's money was invested in the Remington property, he is entitled to no interest therein. He contributed $300 out of his commissions, wrongfully collected from the Eberhardt heirs, which would entitle him, as we cannot look to the source of the money he contributed, to a one-fifth interest in that property. Flanagan must account for all moneys received for both properties, except for his share in the Eberhardt property.

In No. 288, wherein H. J. McCully is the appellant, the decree of the lower court is reversed and a decree is to be entered in accordance herewith. In No. 289, wherein J. C. Flanagan is the appellant, the appeal is dismissed. Costs in both appeals are to be paid by J. C. Flanagan.