East & West Coast Service Corporation *v.* Papahagis, Appellant (No. 1).

Argued January 19, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*George H. Detweiler,* with him *Robert A. Detweiler,* for appellant.

*William Sandberg,* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 23, 1942:

This is an appeal from the decree of the court below ordering the defendant to assign to the plaintiff all of his interest in a contract executed by him and the Lanbar Hotel Company, the owner and operator of the Hotel Broadwood in the City of Philadelphia, on June 1, 1938, for the checking concession of the Broadwood Hotel, and declaring the defendant a trustee of all profits earned from the concession and ordering an accounting.

The pertinent facts found by the court below are as follows: The defendant was employed by the plaintiff in 1933, and in 1935 was made manager in charge of plaintiff's checking concession at the Broadwood Hotel, Philadelphia. He knew plaintiff's contract with the Hotel Company would expire on June 14, 1938, and that

plaintiff was negotiating for a renewal. On February 24, 1938, plaintiff requested the defendant to attempt to secure from the Hotel Company this renewal and the defendant agreed to do so.[1] Without plaintiff's knowledge the defendant in 1937 entered into negotiations with the Hotel Company on his own behalf[2] for the concession at the hotel and offered to pay for it $3,000. a year, which was $500. a year more than the plaintiff was paying under its contract. The contract between the defendant and the Hotel Company was executed on June 1, 1938, and was for one year from June 15, 1938, and from year to year thereafter unless either party gave written notice of termination. Since that date the defendant has operated the concession for himself and has derived profit therefrom.

As the above findings of fact are supported by adequate evidence, we must accept them. *Bishoff v. Valley Dairy Co.*, 302 Pa. 125, 130, 153 A. 133.

The court below concluded that "The defendant had no right to secure [without plaintiff's permission] the concession for himself while in the employ of the plaintiff

---

[1] On May 22, 1938, the defendant wrote the plaintiff that he "tried to see" the manager of the Hotel Company, Mr. Dobbins, but that he was "away for a few days. He will be back the 26th. I will see him then and I will write you or I may come to see you". . . It was testified to by the manager of the plaintiff company that this letter was "in reply to his letter to the defendant as to whether or not he [the defendant] saw Mr. Dobbins about getting a renewal of the lease," (i. e., the checking privilege). On Feb. 24, 1938, the secretary of the plaintiff company told the defendant that "Mr. Dobbins had notified the plaintiff that 'we may not have a renewal of the Broadwood contract' and asked the defendant if he knew anything about it" and the latter answered "No".

[2] Defendant said the negotiations had their beginnings in Mr. Dobbins sending him to the latter's secretary in Dec. 1937 and the secretary asking him if he "was interested in the concession" and he replied he "would be". His offer of $3,000. a year immediately followed. He said he believed that "if he paid $3,000. a year there could still be a profit."

and . . . must account to the plaintiff for all profits earned in the operation of the checking concession at the Broadwood Hotel from June 15, 1938, to the date of the decree filed herewith." The conclusion reached is in accord with the established principles. "Unless otherwise agreed, an agent is subject to a duty not to compete with the principal concerning subject matter of the agency": Restatement of the Law of Agency, Vol. 2, section 393, p. 887. "A fiduciary holding a leasehold interest who in violation of his duty to the beneficiary obtains a renewal of the lease for himself holds the new lease upon a constructive trust for the beneficiary. This principle has been applied not only to express trustees, but to partners, joint adventurers, corporate officers, agents and other fiduciaries.": Scott on Trusts, Vol. 3, section 500, p. 2420. "Where one employed to act as agent of another in the purchase of property takes title in himself, he will be considered in equity as holding the property in trust for his principal, even though he makes the purchase with his own money, in such case being entitled in connection with the enforcement of the trust, to reimbursement of his proper expenditures.": 65 C. J. sec. 227, p. 481. "The rule is well settled that an agent instructed to purchase property for his principal will not be permitted, without his principal's knowledge and consent, to become the purchaser of the same property for himself; and if he makes such purchase he will, although he purchased with his own money, be considered as holding the property in trust for his principal; and the latter, upon repaying or tendering him the amount of the purchase price and his reasonable compensation, may, by proper proceeding in equity, compel a conveyance to himself.": *Johnson v. Hayward,* 103 N. W. 1058, 5 L. R. A. N. S. 112. "A trust will spring from the fraud practiced where one employed to negotiate for another takes advantage of the opportunity to obtain a conveyance to himself.": *Schrager v. Cool,* 221 Pa. 622, 625. See also *Kern v. Smith et ux.,* 290 Pa. 566.

When the defendant "accounts for all profits earned from the checking concession", he is entitled to deduct any expenditures made by him in securing and maintaining the concession and he is also entitled to a reasonable allowance as compensation for managing the concession. The plaintiff in seeking equity "must do equity". "This maxim principally applies to the party who is seeking relief in the character of a plaintiff in the court. Thus for instance if a borrower of money upon usurious interest seeks to have the aid of a Court of Equity in cancelling or procuring the instrument to be delivered up, the court will not interfere in his favor unless upon the terms that he will pay the lender what is really and bona fide due to him. . . . So where a party seeks the benefit of a purchase made for him in the name of a trustee who has paid the purchase-money, but to whom he is indebted for other advances, he shall not be relieved but upon payment of all the money due to the trustee. . . .. It [this maxim] says, in effect, that the court will give the plaintiff the relief to which he is entitled only upon condition that he has given, or consents to give, the defendant such corresponding rights as he also may be entitled to in respect of the subject-matter of the suit.": Story's Equity Jurisprudence, 14th Ed., Vol. 1, section 69 and 72.

This is not a case where a trustee has fraudulently converted trust funds to his own use, in which case all commissions are denied "on principles of policy, as well as those of morality and justice": *Swartswalter's Account,* 4 Watts 77. In the instant case the defendant is entitled not to "commissions" but to remuneration for labor performed.

Scott on Trusts, Vol. 2, sec. 243, says: "There is no definite rule as to the effect of a breach of trust upon the trustee's right to compensation but the matters rests in the sound discretion of the court. . . ." In some cases "the trustee has been allowed full compensation in spite of his breach of trust, the court merely holding him liable

188

for the loss, if any, resulting from his breach of trust."
The Restatement of the Law of Trust, Vol. 1, sec. 243,
lays down this principle: "If the trustee commits a
breach of trust, the court may in its discretion deny him
full compensation." In the exercise of the court's dis-
cretion as to allowing or denying compensation in such a
case one of the factors which may be considered is
"whether the trustee's services were of value to the
trust": Restatement of the Law of Trusts, Vol. 1, sec.
243, p. 751.

In *Gross v. Belmont Laboratories, Inc., et al.,* 308 Pa.
358, where a decree requiring certain defendants to sur-
render certificates of stock for cancellation and where
"the right of relief was based on the fraud of Heist," one
of the defendants, this court affirmed the decree of the
court below in which decree "Heist's claim that he be
permitted to get back $1,448.58 spent by him in and about
affairs of the enterprise" was allowed. Justice between
the parties in the instant case requires that the defend-
ant be reasonably compensated for the money (if any)
and the time and labor he spent in and about the manage-
ment of this checking concession. Such compensation is
not to be considered as a part of the "profits", to which
the court below properly found the defendant was *not*
entitled.

The decree is affirmed at appellant's cost.