Hamberg *v.* Barsky et al., Appellants.

Argued December 4, 1946. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Jones, JJ.

Adjudication filed finding defendants trustees of property for plaintiff. Defendants appealed.

*William A. Gray,* with him *Walter Stein,* for appellants.

*Ivan Michaelson Czap,* with him *Henry W. Balka,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 6, 1947:

A tenant of a store property, wishing to obtain a renewal of his lease, was approached by a friend who, eager to procure for himself a lease of the adjoining store, offered, for their mutual advantage, to negotiate with the common owner of the two properties in order to accomplish both of the desired objects. The tenant, with faith in his friend, and at the latter's request, refrained from negotiating a renewal of his lease. Betraying the confidence reposed in him, the friend, unable to obtain the adjoining premises, secretly secured for himself a lease of the other's store. The court below held that he thereby made himself a trustee of that lease ex maleficio. The facts of the case, and the applicable principles of equity, require an affirmance of the decree.

Plaintiff, a registered optometrist, had been occupying for seven years the premises No. 14 South 52nd Street, Philadelphia; his current lease was for a term of one year beginning July 1, 1944. Defendants operate a retail business for the sale of ladies' dresses at several shops in Philadelphia, among them a store at No. 6 South 52nd Street. Being threatened with the loss of their tenancy of the latter premises they thought it would be desirable to obtain a lease of No. 16, which was next door to the premises occupied by plaintiff. Defendant George Barsky, who had been on friendly terms for many years with plaintiff and at one time his employer, met him in the latter part of August, 1944, and told him

that he knew the owner of the properties Nos. 14 and 16 very well, and that he, Barsky, was interested in obtaining a lease of No. 16. He told plaintiff to "leave everything" to him; that he would see the owner and "rent both places, and by renting both we will get a better price and we will split the cost", and that, when he made that arrangement, plaintiff could occupy No. 14 and defendants No. 16. Plaintiff replied: "I was going myself [to the owner], but all right." In September, again in October, and again in November, plaintiff telephoned to Barsky inquiring about the progress of the negotiations and was each time assured that the latter was "working on it" and that plaintiff should not "worry about it" but should "leave it" to him. On November 28, 1944 plaintiff received a notice from the agent for the owner notifying him that his lease had been terminated; he reported this to Barsky who assured him that "that doesn't mean anything. I am working on it. Everything is all right." In January Barsky finally confessed to plaintiff that in the course of his negotiations with the owner he had found that he could not rent No. 16 because it was occupied by a soldier whom the owner did not wish to dispossess and accordingly he had leased for himself and his partners the place at No. 14. He followed this announcement with the brazen statement: "Well, Doc, that is good business. If we are sharp enough to outsmart you that is too bad for you."

Barsky denied practially all of these facts, but the chancellor, sustained by the court en banc, accepted the version given by plaintiff and his witnesses. Barsky admits that already on November 14, 1944 he had obtained from the owner a lease of the premises No. 14 South 52nd Street which he took in the name of defendant Thelma Barsky, his wife, the term being for five years and seven months commencing July 1, 1945.

Defendants, on this appeal, pointing out that all the dealings between Barsky and plaintiff consisted of

oral conversations, claim that plaintiff is disentitled to relief because of the Statute of Frauds of March 21, 1772, 1 Sm. L. 389, sec. 1, and the Act of April 22, 1856, P. L. 532, sec. 4. But it is elementary that these statutes do not apply to constructive trusts or to trusts ex maleficio: *Metzger v. Metzger*, 338 Pa. 564, 14 A.2d 285; *Lalick v. Bankovsky*, 350 Pa. 441, 39 A.2d 514. Indeed, the latter act expressly provides that "where any conveyance shall be made of any lands or tenements by which a trust or confidence shall or may arise or result by implication or construction of law . . . then and in every such case such trust or confidence shall be of the like force and effect as if this act had not been passed."

Defendants challenge the court's finding that there existed a confidential relationship between Barsky and plaintiff, who, they say, were not in any position toward one another of trustee and cestui que trust, guardian and ward, attorney and client, or agent and principal, and were not even *intimate* friends. This contention reveals a misapprehension on their part as to what constitutes, in the eyes of equity, a confidential relationship. It is not limited, as defendants apparently believe, to one which arises from circumstances or relations preceding the occurrence which gives rise to the controversy but may spring from the dealings and conversations between the parties in connection with the very transaction itself. It exists between two persons whenever "one has gained the confidence of the other and purports to act or advise with the other's interest in mind": Restatement, Restitution §166; comment d. "Confidential relation is not confined to any specific association of the parties; it is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself. It appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed;

in both an unfair advantage is possible. . . . No precise language can define the limits of the relation or fetter the power of the court to control these conditions. . . . In some cases the confidential relation is a conclusion of law, in others it is a question of fact to be established by the evidence": *Leedom v. Palmer,* 274 Pa. 22, 25, 117 A. 410, 411, 412; *Null's Estate,* 302 Pa. 64, 68, 153 A. 137, 139; *McCown v. Fraser,* 327 Pa. 561, 564, 565, 192 A. 674, 676; *Ringer v. Finfrock,* 340 Pa. 458, 461, 462, 17 A.2d 348, 350. "A confidential relationship is not limited to any particular association of parties but exists wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest": *Drob v. Jaffe,* 351 Pa. 297, 300, 41 A.2d 407, 408.

A clearer case of confidential relationship than that revealed in the present record could hardly be imagined. Here one person has said to another, knowing him to be desirous of renewing a lease essential to his business, that he himself will attend to the matter for the other's benefit, with the added admonition that the latter should refrain from negotiating for it on his own account; relying on this representation, the other does so refrain and thereupon the one who has thus obligated himself deliberately proceeds to secure the desired lease, not for the other, but for himself. Surely this constitutes what might almost be regarded as a typical example of the kind of situation in which equity acts to give relief to the defrauded party. Indeed it might well be held that the relationship between plaintiff and Barsky was one of principal and agent; while no payment of commissions or other monetary consideration was promised to Barsky for undertaking to obtain the lease for plaintiff there was an adequate legal consideration moving to him in that he obtained the advantage, in furtherance of his own interest, of bargaining

for the two premises as an entirety, and also in that plaintiff agreed that he himself would refrain from entering into negotiations with the owner.

The present is not the first case in which the courts of this State have been called upon to denounce the betrayal of a confidential relationship similar to that which existed here and to apply the remedy which equity affords. There is a host of authorities* all of which announce and enforce the principle that if one be induced to confide in the promise of another that he will acquire property for him or for both of them, and is thereby led to do what otherwise he would have forborne or to forbear what he contemplated to do in order to acquire such property, and the promisor acquires the property in his own name, the attempted denial of the confidence is such a fraud as will operate to convert the promisor into a trustee ex maleficio. "A trust will spring from the fraud practiced where one employed to negotiate for another takes advantage of the opportunity to obtain a conveyance to himself": *Schrager v. Cool*, 221 Pa. 622, 625, 70 A. 889, 890; *East & West Coast Service Corp. v. Papahagis (No. 1)*, 344 Pa. 183, 186, 25 A.2d 339, 341. No one can acquire rights in property antagonistic to the person whose interest he has committed himself to protect, nor hold any benefit acquired by fraud or breach of duty; this is one of the fundamental principles of equity jurisprudence.

Decree affirmed; costs to be paid by defendants.

---

* Examples: *Stewart v. Brown*, 2 S. & R. 461; *Brown v. Dysinger*, 1 Rawle 408, 413, 414; *Kisler v. Kisler*, 2 Watts 323, 325; *M'Culloch v. Cowher*, 5 W. & S. 427, 430; *Morey v. Herrick*, 18 Pa. 123, 128, 129; *Seichrist's Appeal*, 66 Pa. 237; *Squire's Appeal*, 70 Pa. 266; *Boynton v. Housler*, 73 Pa. 453; *Schrager v. Cool*, 221 Pa. 622, 70 A. 889; *Kern v. Smith*, 290 Pa. 566, 139 A. 450; *East & West Coast Service Corp. v. Papahagis (No. 1)*, 344 Pa. 183, 186, 25 A.2d 339, 340, 341; *Tibbens v. Burrell*, 46 Pa. Superior Ct. 466; *McCully v. Flanagan*, 99 Pa. Superior Ct. 566.