**Scherman v. Calantoni**

*Herbert Fishbone,* for plaintiff.

*Martin D. Cohen* and *Thomas C. Kubelius,* for defendants.

PALMER, P. J., July 26, 1971.—This matter is before the court on preliminary objections of defendants Pat Calantoni and Sam Calantoni in the nature of a motion for a more specific complaint and a demurrer and on preliminary objections of defendants John P. Gibbons, Nicholas Zawarski and NJR Realty Corporation in the nature of a demurrer to plaintiff's complaint in equity.

## MOTION FOR A MORE SPECIFIC COMPLAINT

Defendants Calantoni assign as grounds for their motion for a more specific complaint: (1) the failure of paragraph 5 of the complaint "to state whether the exclusive right, if such a right existed, was written or oral. If written, a copy of such right should be attached

to the complaint" and (2) the failure of paragraph 7 of the complaint "to state the times and places of the supposed conferences."

Paragraph 5 of the complaint is as follows:

"(5) For a period of approximately three (3) years prior to the date of this Complaint the Plaintiff Joseph Scherman and Defendants Pat Calantoni and Sam Calantoni have been business associates in that College Estates, Inc. has been the developer of a tract in Bethlehem Township, Northampton County, Pennsylvania, known as "College View Estates" and Geo. Calantoni & Sons, Inc., has had the exclusive right, other than College Estates, Inc., to erect houses within said tract."

It appears from paragraphs 6 and 9 of the complaint[1] that plaintiff's suit does not arise from transactions concerning the tract known as "College View Estates" and is not predicated upon any legal relationship arising out of earlier dealings between plaintiff and the Calantonis. Therefore, the allegation that Geo. Calantoni & Sons, Inc., had an exclusive right to erect houses in the parties' earlier joint real estate develop-

---

[1] "6. In July , 1970, the Defendant Pat Calantoni orally suggested to Plaintiff, Joseph Scherman that because development of College View Estates would soon be completed, he and his brother, Sam Calantoni desired that Scherman search for another tract which could be developed on the same basis, to wit: Scherman would install streets, water, electricity, sewers, and other utilities, reserving approximately 20% of the lots thereby made available for construction by a corporation of which he would be a principal stockholder; the balance of lots would be reserved for construction of houses by Defendants Calantoni or by a corporation representing their interests."

"9. On or about August 12, 1970, Plaintiff, Joseph Scherman, began negotiations with Defendant, John P. Gibbons, to obtain an agreement to purchase approximately 118 acres of land in Bethlehem Township, Northampton County, which were then, and are now owned by NJR Realty Corporation."

ment has no relevance to plaintiff's cause of action. It is well established that a motion for a more specific complaint will not be granted to compel the pleading of matter which is not material: 2 Anderson, Penna. Civ. Practice, 1017, 37, n. 83; Ettinger v. Grossman, 1 D. & C. 2d 237 (1954). Even if the allegation in paragraph 5 were relevant, it would not be objectionable for the reason assigned by defendants Calantoni, Pennsylvania Rule of Civil Procedure 1019(h), which provides, in part, that "A pleading shall state specifically whether any claim or defense set forth therein is based upon a writing," has been construed as permitting the inference, from the failure to attach a copy of a written agreement where an agreement is alleged, that the agreement is oral and not written: Harvey Probber, Inc. v. Kauffman, 181 Pa. Superior Ct. 281, 124 A. 2d 699 (1956); 2A Anderson, Pa. Civ. Practice 1019.87, n. 17; Goodrich-Amram, 1019(h)-1 cited with approval in Harvey Probber, Inc., supra. The proper way to attack the failure to attach an exhibit, where objectionable, is by motion to strike; the objection is not cognizable on a motion for a more specific complaint.

The second ground of the motion for a more specific complaint is the failure to allege the times and places of conferences alleged in paragraph 7 of the complaint:

"(7) Following the aforementioned conversation, the Plaintiff Joseph Scherman and the Defendants, Sam and Pat Calantoni met at various times and places for conferences concerning the possible purchase by plaintiff of the following tracts which were originally considered as being potentially desirable for their joint development purposes:

"(A) A tract on Green Pond Road owned by George Seiple;

"(B) A tract in the City of Bethlehem of approximately 60 acres, known as Camelot;

"(C) A tract in Lower Nazareth Township owned by Charles Wasko.

"None of the above tracts was finally considered acceptable by the Defendants Calantoni."

Since plaintiff predicates his cause of action upon transactions pertaining to a fourth tract of land, which he alleges defendants, Pat Calantoni and Sam Calantoni, eventually purchased after lulling him into believing he was the only bidder and represented the Calantonis' interests, we are unable to perceive the relevance of the complained of allegations of paragraph 7. A pleader may not compel more specific pleading of immaterial allegations: 2 Anderson, Pa. Civ. Practice, 1017.37, n. 83; Ettinger v. Grossman, supra. Even if material, the facts requested are within the equal knowledge of defendants who are alleged to have been present at the conferences: Rosko v. Hercules Cement Corp. et al., 33 Northam. Rep. 351 (1955).

For these reasons, the preliminary objections in the nature of a motion for a more specific complaint must be denied and dismissed.

## THE DEMURRER

From the allegations in the complaint, which we must, for the purposes of ruling on a demurrer, assume to be true, it appears that plaintiff, Joseph Scherman, through College Estates, Inc., the residential land development corporation of which he is president and principal stockholder, and defendants, Pat Calantoni and Sam Calantoni, through Geo. Calantoni & Sons, Inc., the construction corporation of which they are the principal officers and shareholders, have collaborated from 1967 to date in a residential development in Bethlehem Township known as "College View Estates." Under this arrangement, Scherman installed streets, water, electricity, sewers and other utilities,

and the Calantonis had the exclusive right to construct houses on approximately 80 percent of the lots. The right to construct houses on the remaining 20 percent of the lots was retained by Scherman's corporation. According to the complaint, in July 1970, when College View Estates was nearing completion, Pat Calantoni informed Scherman that he and his brother, Sam Calantoni, wished to continue their collaboration with him and asked Scherman to search for a new tract for Scherman and the Calantonis to develop under the same terms as they had developed College View Estates. As a result of this conversation, Scherman and the Calantonis considered several new sites. After the Calantonis had rejected three proposed sites, and after he had attempted to buy land adjacent to College View Estates, on August 12, 1970, Scherman began negotiations with defendant, John P. Gibbons, for 118 acres of land situated in Bethlehem Township, owned by defendant NJR Realty Corporation. The principal stockholders of NJR Realty Corporation are defendants John P. Gibbons and Nicholas Zawarski. In mid-October, Scherman informed Pat Calantoni that negotiations for the new purchase of land for the new development were under way and advised him of the details. Calantoni encouraged Scherman to continue the negotiations and requested he and his brother be granted the exclusive rights to build when and if the sale was completed. Scherman terminated his personal negotiations with Gibbons but continued as undisclosed principal until November 24, 1970, through an agent, Al Crawford, to negotiate for the purchase of the 118-acre tract. The Calantonis were kept fully informed of the terms Scherman had proposed and the progress of the negotiations.

According to the complaint, negotiations between Scherman's agent, Al Crawford, and John P. Gibbons

terminated on November 24, 1970, when they agreed on the terms under which Crawford would purchase the stock of NJR Realty Corporation. On December 1, 1970, Scherman was informed by Leonard Cohn, who had acted as attorney for both Scherman and the Calantonis, that the Calantonis had become interested in buying the 118-acre tract for themselves. On the evening of December 1, 1970, Scherman called Pat Calantoni and was advised Calantoni had not known Crawford was acting on behalf of Scherman. Calantoni told Scherman he was willing to have Scherman buy the 118-acre tract and to continue to purchase lots from Scherman in accordance with the arrangement by which they had collaborated in the development of College View Estates.

The following day, Crawford and his attorney, Leonard Cohn, met with Thomas Kubelius, acting as attorney for defendants Gibbons, Zawarski and NJR Realty Corporation, to receive the formal proposal from the sellers.

On Friday, December 4th, two days later, Cohn was informed by Kubelius that the Calantonis were again attempting to purchase the land or stock of NJR Realty Corporation. When Scherman contacted Pat Calantoni the same day, he was assured by him that he, Pat Calantoni, had no wish to purchase the tract and believed Scherman should be the developer. Calantoni promised to speak with his brother, Sam Calantoni, to ascertain whether their decision would be to refrain from bidding for the property and allow Scherman to purchase it and develop it as they had developed College View Estates. Calantoni instructed Scherman to wait two days and call back on December 6, 1970, for the Calantonis' decision.

The following day, December 5th, Cohn received a call from Kubelius informing him an agreement of

sale between Gibbons, Zawarski and NJR Realty Corporation, the sellers, and the Calantonis, the buyers, was ready for signature. Cohn informed Kubelius he was not acting as attorney for the Calantonis in this matter.

On Sunday, December 6th, Scherman called Pat Calantoni, as they had arranged, to learn the Calantonis' decision whether or not to bid competitively against Scherman for the 118-acre tract, and Calantoni informed Scherman that he and his brother, Sam Calantoni, had signed an agreement with Gibbons and Zawarski for the purchase of all outstanding shares of NJR Realty Corporation by the Calantonis or a corporation acting "on their behalf or under their direction."

Defendants Calantoni filed the following preliminary objection:

"The aforesaid Defendants demur to the Plaintiff's Complaint and aver that the said complaint fails (sic) to state a cause of action against Pat Calantoni and Sam Calantoni."

Defendants John P. Gibbons, Nicholas Zawarski and NJR Realty Corporation filed the following two preliminary objections:

"1. The Complaint fails to state a cause of action because Plaintiff alleges no contractual relationship, confidential relationship, fiduciary relationship, or any other relationship between Plaintiff and Defendants, John P. Gibbons, Nicholas Zawarski and NJR Realty Corporation, by which said Defendants would be under any legal obligation to the plaintiff.

"2. Plaintiff alleged an Agreement for the sale of real property and failed to allege a written contract pursuant to the Statute of 1772."

The Supreme Court has recently adopted as the law in Pennsylvania the rule stated in Restatement of

Torts, 766, as it applies to the tort of inducing a refusal to enter into a prospective contract:

"Section 766. General Principle.

"Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

"(a) perform a contract with another, or

"(b) enter into or continue a business relation with another

"is liable to the other for the harm caused thereby."

In Glenn et al. v. Point Park College, 441 Pa. 474 (1971), the court noted that interference with a prospective contractual relation is a tort well established at common law,[2] citing the case of Keeble v. Kickeringill, 103 Eng. Rep. 1127 (Q. B. 1706), and held the trial court had erred in dismissing the complaint without leave to amend in a suit in trespass wherein real estate brokers sought damages from a vendee of real estate who negotiated a direct purchase from the vendor, thus depriving the brokers of their anticipated commission. In order to make out a cause of action for interference with a prospective contractual relationship, a plaintiff must allege (1) a prospective contractual relation between plaintiff and a third party; (2) the purpose or intent to harm plaintiff by preventing the relationship from occurring; (3) the absence of privilege or justification on the part of defendant, (4) the occurrence of actual harm to plaintiff as a result of defendant's conduct: Glenn et al. v. Point Park College, supra, at 479-480.

The complaint, in paragraph 11, sufficiently avers a prospective contractual relation:

"(11) Plaintiff had discontinued direct discussion

---

[2] See also Restatement of Torts, 766, Comment (b), "Historical development and rationale."

with Gibbons, but continued to negotiate for the 118-acre tract as an undisclosed principal through his agent, Al Crawford, until on or about November 24, 1970, with the full knowledge and concurrence of Defendants, Sam and Pat Calantoni, as to the terms which Plaintiff was offering. At that time, Al Crawford and Defendant, John P. Gibbons, agreed on the terms under which Al Crawford would purchase the stock of NJR Realty Corporation."

Paragraphs 10, 12, 13, and 21(E), (F), and (G) sufficiently aver the second element, purpose or intent to harm plaintiff by preventing the relationship from occurring, by alleging (a) that defendants Calantoni knew the details and progress of the negotiations between plaintiff and the vendors on the date they (the Calantonis) allegedly purchased the 118-acre tract; (b) that the Calantonis knew Al Crawford was negotiating for the purchase of the tract on plaintiff's behalf, and (c) that if they purchased the property, it would mean, perforce, plaintiff would be deprived of his anticipated economic gain from its development. Thus, in paragraphs 21 (E), (F), and (G), plaintiff alleges:

"(E) On December 1, 1970, Defendant, Pat Calantoni, misrepresented to Plaintiff that the Defendants would continue to purchase from the Plaintiff and would not purchase the land owned by NJR Realty Corporation. Defendants thus lulled Plaintiff into believing that they were not competing in the bidding at a time when they knew that Plaintiff's counsel was discussing final terms to purchase the stock of NJR Realty Corporation.

"(F) Defendant, Pat Calantoni, deliberately misrepresented to Plaintiff that he favored Plaintiff's purchase of the land and asked Plaintiff to delay taking any action from bidding competitively against him, so that on the following day the Defendants were able to

complete an agreement, having lulled the Plaintiff into believing that they would not take such action without first notifying him.

"(G) The Defendants have taken advantage of information given to them confidentially by the Plaintiff and have utilized the results of his negotiations over an extended period of time to enter into an agreement on substantially the same terms he negotiated and from whose economic benefits they have improperly excluded the Plaintiff."

It is plain the complaint alleges something more than a negligent interference with plaintiff's alleged prospective agreement with the vendor for the purchase of the tract. It alleges (1) an overt act, the intentional signing of an agreement of sale; (2) in a transaction to which plaintiff was not a party; (3) the execution of which is logically incompatible with the consummation by plaintiff of his prospective agreement; (4) by persons having full knowledge of the existence and terms of the plaintiff's prospective contract, and (5) who played an active role[3] in obtaining an agreement of sale which would benefit themselves and exclude plaintiff. In order to plead the element of "specific intent," it is not necessary to allege ill will.[4] Restatement of Torts, 766, comment m provides:

---

[3] Thus, the instant situation is not that discussed in Restatement of Torts, 766, comment i: "One does not induce another to commit a breach of contract with a third person under the rule stated in this Section when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person . . . For instance B is under contract to sell certain goods to C. He offers to sell them to A, who knows of the contract. A accepts the offer and receives the goods. A has not induced the breach and is not subject to liability under the rule state in this Section . . ." Paragraph 21(d) alleges not that Defendants Pat Calantoni and Sam Calantoni accepted an offer, but "bid against the Plaintiff."

[4] See also 86 Corpus Juris Secundum, Sec. 43 at 957-958.

"Ill will on the part of the actor toward the person harmed is not an essential condition of liability under the rule stated in this Section. He may be liable even when he acts with no desire to harm the other . . .".

In a "special note," the comment continues:

"There are frequent expressions in judicial opinions that 'malice' is requisite for liability in the cases treated in this Section. But the context and course of decision make it clear that what is meant is not malice in the sense of ill will but merely purposeful interference without justification. Malicious conduct may be an obvious type of such interference, but it is only one of several types."

We believe the above-quoted portions of the complaint sufficiently aver a "purposeful interference."

We turn, therefore, to the question whether the complaint sufficiently pleads the third requisite element, absence of privilege or justification. In Glenn et al., supra, at 482, the court quoted approvingly from Harper & James, The Law of Torts, Sec. 6.11:

" '. . . where, as in most cases, the defendant acts at least in part for the purpose of protecting some legitimate interest which conflicts with that of the plaintiff, a line must be drawn and the interests evaluated. This process results in according or denying a privilege which, in turn, determines liability.' What is or is not privileged conduct in a given situation is not susceptible of precise definition. Harper & James refer in general to interferences which 'are sanctioned by the "rules of the game" which society has adopted,' and to 'the area of socially acceptable conduct which the law regards as privileged,' id at 510, 511, and treat the subject in detail in Secs. 6.12 and 6.13. See, also, the Restatement, 768."

Restatement of Torts, sections 767 and 768, enlarge upon the factors in determining the existence of priv-

ilege and, in particular, the privilege of the competitor, claimed by defendants Calantoni. Section 767 provides:

"In determining whether there is a privilege to act in the manner stated in §766, the following are important factors:

"(a) the nature of the actor's conduct,

"(b) the nature of the expectancy with which his conduct interferes,

"(c) the relations between the parties,

"(d) the interest sought to be advanced by the actor, and

"(e) the social interests in protecting the expectancy on the one hand and the actor's freedom of action on the other hand."

Section 768. Privilege of Competitor, provides:

"(1) One is privileged purposely to cause a third person not to enter into or continue a business relation with a competitor of the actor if

"(a) the relation concerns a matter involved in the competition between the actor and the competitor, and

"(b) the actor does not employ improper means, and

"(c) the actor does not intend thereby to create or continue an illegal restraint of competition, and

"(d) the actor's purpose is at least in part to advance his interest in his competition with the other.

"(2) The fact that one is a competitor of another for the business of a third person does not create a privilege to cause the third person to commit a breach of contract with the other even under the conditions stated in Subsection (1)."

The gist of plaintiff's contentions relative to this requirement is that the Calantonis, by statements to plaintiff, gave plaintiff the impression they were not competitors at a time when, in fact, they were compet-

ing with him behind his back in circumstances under which he was justified in relying on their word. Having been lulled into believing they either were not competing with him or would inform him if they decided to compete with him in the bidding, plaintiff postponed taking the steps he could have taken to protect his interest had he known the Calantonis were bidding against him. Thus, the complaint alleges defendant, Pat Calantoni, told plaintiff he and his brother would have a decision whether they wished to bid competitively by Sunday, December 6, 1970, but bid competitively and purchased the property on Saturday, December 5, 1970.

Comment (a) of section 767 states:

"The issue in each case is whether the actor's conduct is justifiable under the circumstances; whether, upon a consideration of the relative significance of the factors involved, his conduct should be permitted despite its expected effect of harm to another. Decision therefore depends upon a judgment and choice of values in each situation."

We hold, under the facts alleged in the complaint, which we must for purposes of ruling on the demurrer assume to be true, that defendants Calantoni cannot rely on the privilege of competitors, outlined in section 768, with special reference to 768(b), where they intentionally caused plaintiff to believe they were not competing with him in the bidding and to refrain from taking steps he could have taken to protect his interest. Compare Hamberg v. Barsky, 355 Pa. 462 (1947), and cases cited therein.

The requirement of an allegation of the "occurrence of actual harm or damage to plaintiff as a result of the actor's conduct" is met by the allegation of paragraph 21(G) that plaintiff would have realized an "economic benefit" by purchasing the property.

For these reasons, the preliminary objection in the nature of a demurrer of defendants, Pat Calantoni and Sam Calantoni, must be denied and dismissed.

We turn finally to the preliminary objections of defendants, John P. Gibbons, Nicholas Zawarski and NJR Realty Corporation in the nature of a demurrer. Although plaintiff admits the complaint states no cause of action against these defendants, he contends that, as a practical matter, equitable relief would be inadequate if they are not held in the action as defendants and argues that in such circumstances the court possesses equitable powers to grant relief against a party against whom no cause of action has been stated. Assuming, without deciding, plaintiff's proposition concerning the scope of the chancellor's powers in this regard, we disagree with plaintiff's contention that adequate relief for the alleged interference with plaintiff's prospective contract, necessarily includes relief against defendants Gibbons, Zawarski and NJR Realty Corporation. If these defendants have already transferred to defendants, Sam and Pat Calantoni, the land or stock of the NJR Realty Corporation, no equitable relief against Gibbons, Zawarski or the NJR Realty Corporation would aid plaintiff. If the land and stock have *not* been transferred to the Calantonis, it would appear an injunction restraining the Calantonis from taking title to the tract would afford plaintiff all the nonpecuniary equitable relief to which he would be entitled, and which would be necessary to protect his legitimate interest in the tract. For this reason, the preliminary objection in the nature of a demurrer of defendants, Gibbons, Zawarski and NJR Realty Corporation, is sustained.

## ORDER OF COURT

And now, this July 26, 1971, the preliminary ob-

jections of defendants, Sam Calantoni and Pat Calantoni, in the nature of a motion for a more specific complaint and in the nature of a demurrer are denied and dismissed.

The preliminary objections of defendants, Gibbons, Zawarski and NJR Realty Corporation, in the nature of a demurrer are sustained with leave to plaintiff to plead over within 20 days as to defendants, Gibbons, Zawarski and NJR Realty Corporation.